No. 23-1231

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**
        Plaintiff-Appellee,

        v.

**JOSE REYNA**
        Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Indiana
Case No.  3:21-CR-41
The Honorable Judge Robert L. Miller, Jr.

# BRIEF AND REQUIRED SHORT APPENDIX
# OF DEFENDANT-APPELLANT JOSE REYNA

Northern District of Indiana
Federal Community Defenders, Inc.
Chad J. Pennington
Attorney for Defendant-Appellant
Jose Reyna

2929 Carlson Drive Suite 101
Hammond, IN  46323
Telephone: (260) 422-9940
Fax: (260) 422-9954
Email: Chad_Pennington@fd.org

**Oral Argument Requested**

Save As          Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: ___23-1231___

Short Caption: ___U.S. v.___          ___Jose Reyna___

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐          **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

_Jose Reyna_

_____

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Chad J. Pennington          N. District of IN Fed. Comm. Defenders, Inc., 2929 Carlson Dr. Ste 101, Hammond, IN 46323

Scott J. Frankel          N. District of IN Fed. Comm. Defenders, Inc., 130 S. Main St. Ste 300, S. Bend, IN 46601

(3)     If the party, amicus or intervenor is a corporation:

        i)     Identify all its parent corporations, if any; and

               _____

        ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

               _N/A_

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

_____

Attorney's Signature: _s/Chad J. Pennington_          Date: _2/8/2023_

Attorney's Printed Name: _Chad J. Pennington_

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☒     No ☐

Address: _2929 Carlson Dr. Suite 101_

         _Hammond, IN  46323_

Phone Number: _219-937-8020_          Fax Number: _219-937-8021_

E-Mail Address: _Chad_Pennington@fd.org_

rev. 12/19 AK

## TABLE OF CONTENTS

**PAGE**

Appearance & Circuit Rule 26.1 Disclosure Statement .................................................. i

Table of Contents ..........................................................................................................ii

Table of Authorities .....................................................................................................iii

I. Introduction ............................................................................................................. 1

II. Jurisdictional Statement ......................................................................................... 6

III. Issue Presented ...................................................................................................... 8

IV. Statement of the Case ............................................................................................ 8

V. Argument Summary ............................................................................................... 11

VI. Standard of Review .............................................................................................. 14

VII. Argument ............................................................................................................. 14

      A. The Second Amendment's Plain Text Protects the Right to Keep and Bear Arms, Including for Confrontation and Defense of the Home and Person. ...................................................................................... 15

      B. A Serial Number is Not Dispositive as to Whether any Firearm is Protected by the Second Amendment's Plain Text ................................... 22

      C. Mr. Reyna Possessed a Handgun, a Firearm Commonly Used for Defensive Purposes. .................................................................................. 28

      D. Mr. Reyna Remains Part of "the People" the Second Amendment Protects. .................................................................................................... 33

VIII. Conclusion ......................................................................................................... 36

IX. Statement Concerning Oral Argument ................................................................. 37

Certificate of Compliance with F.R.A.P. Rule 32(a)(7)(C)......................................... 38

Certificate of Service................................................................................................... 39

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*District of Columbia v. Heller*, 554 U.S. 570, 576-77, 579-82, 592, 625, 627-29, 634-35 (2008) ................................................................................................ *Passim*

*Ezell v. City of Chicago*, 846 F.3d 888, 892 (7th Cir. 2017) ........................................ 15

*Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) .................................................... 36

*McDonald v. City of Chicago*, 561 U.S. 742, 767-68, 780 (2010) ............... 8, 27, 29, 34

*Moore v. Madigan*, 702 F.3d 933, 937 (7th Cir. 2012) ............................................... 16

*N.Y. Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122, 2126-30, 2132, 2134-35, 2143, 2156 (2022) ................................................................................. *Passim*

*United States v. Bass*, 325 F.3d 847, 849 (7th Cir. 2003) .......................................... 14

*United States v. Combs*, Criminal Action No. 5: 22-136-DCR, 2023 WL 1466614, at *2-3 (E.D. Ken. Feb. 2, 2023) ............................................................................... 21

*United States v. Harris*, 720 F.3d 499, 502-503 (4th Cir. 2013) ................................ 26

*United States v. Harrison*, --- F. Supp. 3d ---, 2023 WL 1771138, at *3 (W.D. Okla. Feb. 3, 2023) .......................................................................................... 20, 21

*United States v. Hicks*, W:21-CR-00060-ADA, 2023 WL 164170, at *3 (W.D. Tex. Jan. 9, 2023) ............................................................................................ 35

*United States v. Holden*, --- F. Supp. 3d ---, 2022 WL 17103509, at *3 (N.D. Ind. Oct. 31, 2022) ............................................................................................ 19

*United States v. Johnson*, 42 F.4th 743, 746 (7th Cir. 2022) ..................................... 14

*United States v. Kays*, No. CR-22-40-D, --- F. Supp. 3d ---, 2022 WL 3718519, at *2-3 (W.D. Okla. Aug. 29, 2022) ................................................................................ 20

*United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010) ...................... 25, 27, 28

*United States v. Meza-Rodriguez*, 798 F.3d 664, 668, 669 (7th Cir. 2015) ........ 14, 33

*United States v. Miller*, 307 U.S. 174, 179 (1939) ...................................... 22, 23, 31

*United States v. Perez-Gallan*, --- F. Supp. 3d ---, 2022 WL 16858516, at *3 (W.D. Tex. Nov. 10, 2022) ....................................................................................... 21

*United States v. Price*, --- F. Supp. 3d ---, 2022 WL 6968457, at *3 (S.D. W.V. Oct 12, 2022) ................................................................................................. 9, 20, 26

*United States v. Quiroz*, No. PE:22-CR-00104-DC, --- F. Supp. 3d ---, 2022 WL 4352482, at *3-4 (W.D. Tex. Sept. 19, 2022) ............................................................. 20

*United States v. Rahimi*, 61 F.4th 443, 451, 453-54 (5th Cir. 2023) ................ *Passim*

*United States v. Sprague*, 282 U.S. 716, 731 (1931) ................................................ 28

*United States v. Stambaugh*, --- F. Supp. 3d ---, 2022 WL 16936043, at *3 (W.D. Okla Nov. 14, 2022) ................................................................................... 20

*United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) ................................. 34


**STATUTES**

18 U.S.C. § 922(g)(3) ............................................................................. 20, 21

18 U.S.C. § 922(g)(8) ............................................................................. 19, 21

18 U.S.C. § 922(k) ................................................................................ *Passim*

18 U.S.C. § 922(n) ......................................................................... 19, 20, 35

iii

18 U.S.C. § 3231 ................................................................................ 6
18 U.S.C. § 3742 ................................................................................ 6
28 U.S.C. § 1291 ................................................................................ 6
28 U.S.C. § 2106 ................................................................................ 6

## OTHER AUTHORITIES

Federal Rule of Appellate Procedure 4(b)(1)(A)(i) ........................... 7
Federal Rule of Appellate Procedure 34(a) ..................................... 37
Federal Rule of Criminal Procedure 11(d)(2) .................................. 9
Federal Rule of Criminal Procedure 12(b)(3) .................................. 9
Federal Rule of Criminal Procedure 12(c)(3) .................................. 9
U.S. Const. amend. II .............................................................. *Passim*

# I.    INTRODUCTION

Mr. Reyna's direct appeal is one of the many Second Amendment challenges filed nationally post-*Bruen*, attacking the constitutionality of a federal, criminal firearm regulation.  *See N.Y. Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  In this case, the government claims that Mr. Reyna possessed a firearm with an obliterated serial number.   18 U.S.C. § 922(k) makes such conduct a federal felony.  The question here is whether the District Court wrongly decided that the statute is not subject to Second Amendment protection.

At the heart of most of the recent Second Amendment challenges is the broader constitutional question of what is *Bruen's* significance?  Specifically, whether *Bruen* reflects a transformative shift in Second Amendment interpretation, application, and fundamental individual constitutional protection.  Or, whether *Bruen* is a more measured holding, clarifying *Heller* and the Supreme Court's recent Second Amendment jurisprudence.

Generally, the significance of *Heller* was that the holding confirmed the Second Amendment's text – there is a preexisting

individual constitutional right to keep and bear arms, not limited to the carrying of arms in militia service. The Court reached that decision by surveying the "historical background of the Second Amendment." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). *Heller* stated that the type of firearms the Second Amendment protected were the "sorts of weapons . . . in common use at the time" of the founding. *Id.* at 627 (internal citations omitted). "That limitation is fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons" or the so-called conjunctive test. *Heller*, 554 U.S. at 627 (internal citations omitted).

The questions left open by *Heller*, however, were manifold: does the Second Amendment apply outside of the home? Who can be prohibited from firearm possession? What weapons are protected under the Second Amendment? What weapons are categorically excluded from Second Amendment protection. And most importantly, how should a reviewing court assess a Second Amendment challenge?

Though the scale of change is debatable, *Bruen* is a directive to the lower courts. Post-*Bruen*, the purpose of a firearm regulation is no longer a germane judicial consideration. The government or state

interest in restricting firearm access no longer matters.  In the Second
Amendment context, the lower court should first determine whether the
conduct at issue is protected by the Second Amendment's plain *text*, and
if so, it should then determine whether the challenged firearm
regulation is consistent with the nation's historical tradition of firearm
regulation.  If the regulation is ahistorical or inconsistent with the
national firearm tradition from the time of the Second Amendment's
ratification in 1791, the challenged firearm regulation is
unconstitutional.

Furthermore, unlike *Heller*, *Bruen* confined the historical test and
imposed upon the government the affirmative duty to proffer sufficient
and appropriate forms of historical evidence.   The Court reasoned that
"[t]he Second Amendment guaranteed to all Americans the right to bear
commonly used arms in public subject to certain reasonable, well-
defined restrictions." *Bruen*, 142 S. Ct. at 2156.  "Those restrictions, for
example, limited the intent for which one could carry arms, the manner
by which one carried arms, or the exceptional circumstances under
which one could not carry arms . . . ." *Id.*  Though *Heller* discussed
history and its importance in the Second Amendment framework, it did

not elaborate on what kind of history was sufficient and certainly did not impose a requirement that the proffered historical basis be both reasonable and well-defined.

Whatever the scope of the Second Amendment right was before *Bruen*, post-*Bruen*, it begins with the basic premise that a citizen has a textual Second Amendment right coextensive with other Bill of Rights protections. And, to invade that constitutional right through regulation, the government must carry a burden to affirmatively show that the regulation is historically consonant. What does that mean: the government carries the burden of showing the firearm regulation is reasonable and well-defined within the historical context. *See Bruen*, 142 S. Ct. at 2156.

How substantial a change this may be is left to this Court's resolution, but whatever *Bruen* is, the new test it demands cannot be called a simple clarification. In *Bruen*, the Supreme Court clearly stated that lower courts had misapplied the Second Amendment methodology since *Heller*, and its intervention was necessary to reestablish that the Second Amendment right was not subject to means-end balancing and other forms of scrutiny that favored a state's or the government's

4

regulatory interest over the vested individual Second Amendment interest.  Whether *Bruen's* new test requires a reworking of the federal firearm chapter remains to be seen, however, there is no doubt that the Supreme Court granted review and decided *Bruen* the way it did because, because it believed something was missed post-*Heller* and needed to be changed.

This case on appeal presents a narrow and rather straight forward question of law applying the *Bruen* analytical framework: whether the conduct at issue under § 922(k) is covered by the Second Amendment's plain text.  *Bruen*, 142 S. Ct. at 2128.  Stated differently, the question here is whether the District Court wrongly decided that the statute is not subject to Second Amendment protection.  Section 922(k) provides that "[i]t shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered" or "*to possess or receive* any firearm which has had the importer's or manufacturer's serial number removed, obliterated or altered and has, at any time, been shipped or transported in interstate or foreign commerce."  Mr. Reyna contends that the statute

unambiguously regulates *receiving* and the *possession* of an unserialized firearm, including handguns, and that receiving and possession of a firearm, i.e., the right to keep and bear arms, is expressly protected by the Second Amendment's plain text.  Mr. Reyna's interpretation aligns with the textual substance of the vested individual right the Second Amendment protects --- the right "to keep and bear arms in case of confrontation[,]"  *Heller*, 554 U.S. at 581, both in and outside of the home.

Mr. Reyna seeks reversal of the District Court's finding as to the first prong of the *Bruen* analysis, that the Second Amendment's plain text does not cover § 922(k), and seeks remand for a determination of whether the government has affirmatively demonstrated that the challenged statute is consistent with the nation's history and tradition of firearm regulation consistent with *Bruen*.

## II.   JURISDICTIONAL STATEMENT

The District Court exercised subject matter jurisdiction over Mr. Reyna's criminal case pursuant to 18 U.S.C. § 3231.  This Court exercises appellate jurisdiction over Mr. Reyna's direct appeal under 28 U.S.C. §§ 1291, 2106, and 18 U.S.C. § 3742.

On October 17, 2022, Mr. Reyna moved to dismiss his case, R. 28, and on December 15, 2022, the District Court denied his motion. R. 38; *see also* App. pp. 4-16 (order on appeal). On January 30, 2023, the District Court entered final judgment, imposing a 28-month custodial sentence, with a period of supervised release to follow of 24 months. R. 47 pp. 2-3; *see also* App. pp. 17-18. The District Court's entry of final judgment concluded the proceedings in that forum.

On February 6, 2023, Mr. Reyna filed a timely notice of appeal pursuant to Federal Rule of Appellate Procedure 4(b)(1)(A)(i). R. 49. On February 7, 2023, this Court docketed Mr. Reyna's criminal case, and set March 20, 2023, as his opening Appellant brief deadline. DE 1. On March 13, 2023, Mr. Reyna moved for a time enlargement to file his opening brief, DE 5, which this Court granted, setting April 26, 2023, as the Appellant opening brief deadline. DE 6. Mr. Reyna now timely submits his opening Appellant brief challenging the District Court's denial of his motion to dismiss.[1]

---

[1] "R" refers to the District Court docket entries. "DE" refers to the docket entries before this Court. "App" refers to the short appendix attached in support of this brief.

### III.   ISSUE PRESENTED

Whether the Second Amendment's plain text covers § 922(k)'s regulated conduct.  The District Court erred in concluding that § 922(k) is not covered by the Second Amendment's plain text.

**Apposite Authority**

*N.Y. Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)

*District of Columbia v. Heller*, 554 U.S. 570 (2008)

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)

### IV.   STATEMENT OF THE CASE

On May 12, 2021, the government filed a one-count indictment against Mr. Reyna, charging him under § 922(k).  R. 1; *see also* App. pp. 2-3.  On July 11, 2022, Mr. Reyna plead guilty to the single count.  R. 16.  Mr. Reyna did not plead guilty pursuant to a plea agreement or a conviction or appellate waiver agreement.  R. 55, Transcript, p. 2.

On September 14, 2022, United States Probation drafted the initial Presentence Investigation Report ("PSR").  R. 19.  The parties did not object to the initial PSR draft.  R. 20, 21.

On October 17, 2022, Mr. Reyna moved to dismiss the proceeding under the Second Amendment and attendant *Bruen* framework.  *See*

8

*generally* R. 28; App. 4-16; R. 55, Transcript, motion to dismiss hearing. Mr. Reyna argued that § 922(k) facially violated the Second Amendment.  R. 28; *see also* App. 4-16.  Mr. Reyna further argued that he was not foreclosed from contesting the constitutionality of § 922(k) (a claim of legal innocence) post-plea, but pre-sentence, and that there was good-cause to entertain the dismissal motion given the recent opinion in *United States v. Price*, --- F. Supp. 3d ---, 2022 WL 6968457 (S.D. W.V. Oct. 12, 2022), holding that § 922(k) facially violates the Second Amendment applying *Bruen*.  R. 28 pp. 3, 7-8; *see also* Fed. R. Crim. P. 12(b)(3); Fed. R. Crim. P. 12(c)(3).

On December 15, 2022, the District Court denied Mr. Reyna's motion to dismiss.  R. 38; App. pp. 4-16.  As to his guilty plea, the District Court found that if Mr. Reyna's argument is correct and § 922(k) violates the Second Amendment, his claim to legal innocence is a fair and just reason for him to "withdraw his guilty plea and for the court to grant his motion to dismiss the indictment" under Federal Rule of Criminal Procedure 11(d)(2).  R. 38 pp. 3-4; App. pp. 6-7.

The District Court, however, found that "§ 922(k)'s regulated conduct is outside [the] scope of the Second Amendment" and that "is

enough to decide Mr. Reyna's challenge to his indictment and guilty plea.  Mr. Reyna's motion to dismiss must be dismissed on this basis so the court declines to consider whether the government's evidence of historical gun and gunpowder regulations justify § 922(k)."  R. 38 p. 13; App. p. 16.  The District Court did not address whether § 922(k) restricted firearms consistent with the national history and tradition. The District Court's conclusion stated that "the Second Amendment right to keep and bear arms doesn't extend to arms that aren't typically possessed by law-abiding citizens for lawful purposes."  R. 38 p. 13; App. p. 16.  "Law-abiding citizens don't typically possess firearms with obliterated serial numbers for lawful purposes . . . ."  R. 38 p. 13; App. p. 16.  Synthesizing the District Court's ruling, it found that: 1.) firearms, including handguns, without a serial number are not the type of kept or bearable arms protected by the Second Amendment; and, the conduct § 922(k) regulates, possession of a firearm without a serial number, is not Second Amendment protected.

On January 30, 2023, the District Court imposed a 28-month custodial sentence, with a period of 24 months of supervised release to follow.  R. 44.  The District Court's custodial sentence varied five

months below the uncontested advisory sentencing guideline range of 33 to 41 months.  *See* R. 54, Transcript, p. 4; *see also* PSR ¶ 71 ("Based upon a total offense level of 19 and a criminal history category of II, the guideline imprisonment range is 33 months to 41 months.["]); R. 54, Transcript, p. 3 (the parties again raised no objection to the PSR).  Mr. Reyna now submits this direct appeal, challenging the District Court's denial of his motion to dismiss – that § 922(k)'s regulation of firearm conduct is not subject to Second Amendment protection.

## V.   ARGUMENT SUMMARY

This case presents a narrow question of law; whether the conduct § 922(k) regulates falls within the ambit of the Second Amendment's plain text.  This analysis includes both consideration of the types of arms § 922(k) regulates and the conduct at issue under the statute – firearm possession and receipt.  To Mr. Reyna's knowledge, this case presents a matter of first impression before this Court.

The Second Amendment of the United States Constitution reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The absence of a serial number does not excise Mr. Reyna and the

conduct § 922(k) regulates, possessing or receiving an unserialized firearm, including a handgun, from the Second Amendment's plain text.

In *Heller*, the Court reasoned that "the most natural reading of keep Arms in the Second Amendment is to have weapons." 554 U.S. at 582 (internal citation omitted). The Court further stated that the term "bear" as used in the Second Amendment meant from the time of the founding to "carry." *Id.* at 584. The Court opined that "from those formulations . . . [keeping and to] bear arms did not refer only to carrying a weapon in an organized military unit." *Id.* First and fundamentally, keeping and bearing arms, means to possess, and such possessory conduct falls within the heartland of the Second Amendment's protective ambit. A plain and ordinary reading of § 922(k)'s restrictions on possession of any firearm without a serial number demonstrates that the regulation falls within the Second Amendment's plain text.

Next, Mr. Reyna possessed a handgun, which the Supreme Court has emphasized falls within the Second Amendment's protective heartland for the purpose of effectuating defense of the home and self. Furthermore, handguns have been extant and commonly used for that

purpose from the time of the founding though the present.  As a species or class of firearms for defensive purposes, the handgun is the historically preferred weaponry.  The District Court ignored the challenged statute's regulation of handgun possession.

Last, a serial number or absence of a serial number does not control whether a firearm regulation or the conduct it purports to regulate falls within the Second Amendment's plain text.  Firearms, including handguns, lacking a serial number are neither more dangerous or unusual weapons as the Supreme Court has defined those terms or are necessarily uniformly possessed for unlawful purposes.

Again, this case presents a straight-forward inquiry that the District Court simply got wrong.  Section 922(k) regulates the receipt and possession of all firearms regardless of the purpose of the possession.  In that way, the statute infringes on the right to keep and bear firearms for the purpose of defense of the home and self – the gravamen of the Second Amendment.  The Second Amendment's plain text covers the conduct and firearms § 922(k) regulates.  The District Court erred in finding that § 922(k) is not subject to Second Amendment review.  This Court should remand for analysis of whether the

government has affirmatively shown that § 922(k) is consistent with the
nation's history and tradition of firearm regulation.

## VI.   STANDARD OF REVIEW

"The standard of review for a district court's determination of a
statute's constitutionality is *de novo*." *United States v. Bass*, 325 F.3d
847, 849 (7th Cir. 2003) (internal citation omitted).   This Court has
applied the *de novo* standard of review to a District Court's textual
interpretation.  *See United States v. Johnson*, 42 F.4th 743, 746 (7th
Cir. 2022).  This Court has applied the *de novo* standard of review to
Second Amendment challenges to a statute.  *See United States v. Meza-
Rodriguez*, 798 F.3d 664, 668 (7th Cir. 2015).  The Court has stated that
the Second Amendment and its concomitant scope is "enshrined with
the scope [it was] understood to have when the people adopted [it]."
*Heller*, 554 U.S. at 634.  A sister Circuit applied a *de novo* standard of
review in assessing a facial Second Amendment challenge post-*Bruen*.
*See United States v. Rahimi*, 61 F.4th 443, 451 (5th Cir. 2023).

## VII.  ARGUMENT

In *Bruen*, the Court stated that the "standard for applying the
Second Amendment is as follows: When the Second Amendment's plain

14

text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  142 S. Ct. at 2129-30.   "The threshold question is whether the regulated activity falls within the scope of the Second Amendment*." Ezell v. City of Chicago*, 846 F.3d 888, 892 (7th Cir. 2017) (*Ezell* II) (internal citations omitted).  The District Court erred in finding that receiving or possessing an unserialized firearm – the operative conduct under § 922(k) – is conduct not protected by the Second Amendment's plain text.  Remand is necessary for the District Court to engage the second *Bruen* prong.

### A.   The Second Amendment's Plain Text Protects the Right to Keep and Bear Arms, Including for Confrontation and Defense of the Home and Person.

In *Heller*, the Court found that the Second Amendment language to keep arms meant to "have weapons."  554 U.S. at 582.  The Court further found that to "bear arms" under the Second Amendment applied to weapons "that were not specifically designed for military use and were not employed in a military capacity."  *Id.* at 581.  In *Bruen*, the Court noted that the textual analysis in *Heller* "focused on the normal

and ordinary meaning of the Second Amendment's language." 142 S.
Ct. at 2127. "Normal meaning may of course include an idiomatic
meaning, *but it excludes secret or technical meanings that would not
have been known to ordinary citizens in the founding generation*."
*Heller*, 554 U.S. at 576-77 (emphasis added). "That analysis suggested"
through the Second Amendment's operative clause —"'the right of the
people to keep and bear Arms shall not be infringed—guarantee[s] the
individual right to possess and carry weapons in case of confrontation
that does not depend on service in the militia.'" *Id.* (quoting *Heller*, 554
U.S. at 576-77). In *Bruen*, the Court expanded the right to possess a
firearm for defensive purposes outside of the home. *See e.g.*, 142 S. Ct.
at 2134 (internal citations omitted) ("confining the right to bear arms to
the home would make little sense given that self-defense is the central
component of the Second Amendment right itself."); *see also Moore v.
Madigan*, 702 F.3d 933, 937 (7th Cir. 2012) (finding that *Heller* should
not be read as to limit the Second Amendment solely to the home).

Thus, keeping and bearing arms is what the Second Amendment's
plain text protects. *Heller* articulated a Second Amendment protection
of this conduct inside the home, *Heller*, 554 U.S. at 635; *Bruen*

expanded the protection and established Second Amendment protection of this conduct outside the home. *Bruen*, 142 S. Ct. at 2122; *see also id.* at 2134 (reasoning that "[n]othing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms."). In *Bruen*, the Court found that the Second Amendment's plain text covered the petitioner's proposed course of conduct—"carrying handguns publicly for self-defense." *Id.*

In this case, the District Court's holding focused only on weapons that are "typically possessed by law-abiding citizens for lawful purposes." R. 38 p. 11; App. p. 14. That analysis, however, does not address the first prong of *Bruen* – does the regulated conduct fall within the Second Amendment's *plain text*. Section 922(k) textually regulates receiving and possessing a firearm without regard as to why the firearm is possessed. Section 922(k)'s breadth to include possession or receipt of any firearm including handguns brings it within the Second Amendment's plain text, i.e., the right to keep and bear firearms, to possess, for defensive uses in or outside of the home. Indeed, the Court in *Bruen*, stated that the plain text of the Second Amendment addressed the petitioner's proposed course of conduct of public carrying

17

(possessing) a handgun for such defensive purposes.  142 S. Ct. at 2134.
The District Court's analysis inverted the first prong of *Bruen*.  Instead
of considering and comparing the conduct regulated by § 922(k) to the
Second Amendment's plain text – the right to keep and bear arms for
defensive purposes in and outside of the home – the District Court
instead engaged in a non-textual, speculative analysis that considered
how unserialized firearms are typically used.

The District Court reasoned that "[a] law-abiding citizen who uses
a gun for self-defense has no reason to prefer a deserialized gun to a
gun with the serial number intact."  R. 38 p. 11-12; App. 14-15.  That
analysis, again, however, does not address whether § 922(k) regulation
of individual conduct is covered by the Second Amendment's plain text.
A person's preference, not textually mentioned in either the challenged
statute or the Second Amendment, is immaterial to Second Amendment
textual congruence.

In addition, the District Court failed to consider the normal and
ordinary meaning of the Second Amendment's plain text.  *See Bruen*,
142 S Ct. at 2128.  The District Court's failure to do so resulted in the
legally flawed outcome.  Stated differently, had the District Court

considered the normal and ordinary meaning of the Second

Amendment's keeping and bearing arms language, the District Court

would have likely found that § 922(k)'s restriction on receiving and

possessing a firearm fell within the scope of constitutionally covered

conduct.  *See Rahimi*, 61 F.th4 at 454 (internal citations omitted)

(affirming a district court's dismissal of an indictment raised under 18

U.S.C. § 922(g)(8) (prohibiting firearm possession by a person subject to

a domestic violence protective order) applying *Bruen*, and concluding

"Rahimi's possession of a pistol and a rifle easily falls within the

purview of the Second Amendment.  The [A]mendment grants him the

right to keep firearms, and possession is included within the meaning of

keep.  And it is undisputed that the types of firearms that Rahimi

possessed are in common use, such that they fall within the scope of the

[A]mendment.  Thus, *Bruen's* first step is met . . . .); *see also United

States v. Holden*, --- F. Supp. 3d ---, 2022 WL 17103509, at *3 (N.D. Ind.

Oct. 31, 2022) (dismissing indictment containing allegations under 18

U.S.C. § 922(n) and concluding that "[r]eceiving a firearm is necessarily

a precursor to keeping or bearing a firearm, so Mr. Holden's conduct is

presumptively protected by the Second Amendment"); *United States v.*

19

*Quiroz*, No. PE:22-CR-00104-DC, --- F. Supp. 3d ---, 2022 WL 4352482, at *3–4 (W.D. Tex. Sept. 19, 2022) (granting dismissal of an indictment alleging conduct under § 922(n) and holding that "to keep and bear Arms" includes receiving arms); *United States v. Kays*, No. CR-22-40-D, --- F. Supp. 3d ---, 2022 WL 3718519, at *2–3 (W.D. Okla. Aug. 29, 2022) (same); *Price*, 2022 WL 6968457, at *3 (emphasis added) (abrogating § 922(k) under *Bruen*, reasoning that "commercial regulations may well require that any firearm sale only involve firearms bearing a manufacturer's serial number.  Section 922(k) goes farther.  *It criminalizes the mere possession of a firearm after a serial number is removed, obliterated, or altered in any way, whether or not the firearm is then placed into commerce*.); *United States v. Stambaugh*,  --- F. Supp. 3d --- 2022 WL 16936043, at *3 (W.D. Okla. Nov. 14, 2022) (internal citations omitted) (dismissing an indictment under *Bruen*, brought under § 922(n) reasoning "the Second Amendment's plain text covers Stambaugh's receipt of a firearm, and the Constitution presumptively protects such conduct."); *United States v. Harrison*, --- F. Supp. 3d ----, 2023 WL 1771138, at *3 (W.D. Okla. Feb. 3, 2023) (internal citations omitted) (dismissing an indictment brought under 18 U.S.C. § 922(g)(3)

(prohibiting firearm possession by an unlawful controlled substance
addict or user) and finding that "the Second Amendment's plain text
covers Harrison's conduct of possessing a handgun. . . .  To be clear, the
United States argues that the relevant conduct is keeping and bearing
arms as an unlawful drug user or addict but there are problems with
that characterization. Though Harrison was found while carrying his
firearm, he has been charged under a statute that criminalizes mere
possession, so at trial the United States would have to prove only that
Harrison possessed the gun—the fact he was carrying or bearing the
firearm would not matter for purposes of conviction. Accordingly, for
purposes of analyzing § 922(g)(3), the relevant conduct is possessing or
"keeping" a firearm . . . ."); *United States v. Perez-Gallan*, --- F. Supp. 3d
---, 2022 WL 16858516, at *3 (W.D. Tex. Nov. 10, 2022) (internal
citations omitted) (abrogating § 922(g)(8) under *Bruen*, and concluding
that the "[Supreme] Court has already answered the question of
whether keep and bear arms includes possession of a firearm—it does.
According to Justice Scalia in *Heller*, to keep arms means to have
weapons.  The plain meaning of have is to be in possession of."); *United
States v. Combs*, Criminal Action No. 5: 22-136-DCR, 2023 WL 1466614,

at *2-3 (E.D. Ken. Feb. 2, 2023) (finding that firearm possession is covered by the Second Amendment's plain text).

**B.    A Serial Number is Not Dispositive as to Whether any Firearm is Protected by the Second Amendment's Plain Text.**

The Second Amendment's plain text makes no distinction between possession of serialized or unserialized firearms, any more than it distinguishes between unspecified subsets of "the people." *Heller*, 554 U.S. at 579-581. The District Court here, however, reasoned primarily that an unserialized firearm does not fall within the Second Amendment's text because such firearms are not typically possessed by law-abiding citizens for lawful purposes, and therefore, § 922(k) does not "infringe" or implicate the right to armed self-defense.  This reasoning is legally flawed.

To begin, the test the District Court adopted to exclude certain firearms – "not typically possessed by law-abiding citizens for lawful purposes[,]" *Heller*, 554 U.S. at 625 – is not derived from the Second Amendment's text, but from historical tradition. *See United States v. Mille*r, 307 U.S. 174, 179 (1939).  *Heller* stated that limitation "accords with the *historical understanding* of the scope of the right."  554 U.S. at

625 (emphasis added). Furthermore, the Court stated that the related "in common use at the time" limitation, which similarly derived from *Mille*r, 307 U.S. at 179, "is *fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapon*s." *Id.* at 627 (emphasis added); *accord Bruen*, 142 S. Ct. at 2128 (prefacing discussion of the "in common use at the time" standard, by noting "[a]fter holding that the Second Amendment protected an individual right of armed self-defense, [*Heller*] also relied on the historical understanding of the Amendment to demark the limits on the exercise of that right"); *Id.* at 2132 ("[W]e use history to determine which modern arms are protected by the Second Amendment."). The result is that the "common use" and "lawful purposes" limitations have no role to play at *Bruen's* first prong, whether the regulated conduct is covered by the Second Amendment's plain text. Rather, they are only relevant at *Bruen's* second prong, whether the government has satisfied its affirmative burden of demonstrating the historical tradition of distinctly similar firearm regulation. *See Bruen*, 142 S. Ct. at 2126. Therefore, the District Court erred in applying the *Miller*-based language at the first *Bruen* prong.

However, even assuming *Bruen's* first prong involved an inquiry into "common use" and use for "lawful purposes," the District Court, nonetheless employed only half the relevant test.  The "common use" standard is inextricably related to and centered on limiting "dangerous and unusual weapons."  *Heller* described the "in common use at the time" requirement as being "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons."  554 U.S. at 627.  In other words, "in common use for lawful purposes" and "dangerous and unusual" are two ways of asking the same question.  A weapon is protected by the Second Amendment as long as it either (1) is in common use for lawful purposes, or (2) is not dangerous and unusual. Dangerousness has to do with a firearm's functionality – i.e. whether it makes a gun shoot faster, causes bullets to hit with greater impact, increases the firearm's magazine capacity, or otherwise renders a firearm more deadly.  The lack of a serial number does none of those things.

The District Court here used the quotation "typically possessed by law-abiding citizens for lawful purposes," R. 38 p. 13; App. p. 16, but ignored the second half of the quote "such as short-barreled shotguns."

*Heller*, U.S. at 625. Thus, the District Court did not consider or note how this language addresses not just typicality, but functionality and how that functionality, like the cited short-barreled shotgun affects the imputed dangerousness of the firearm. The District Court engrafted only part of the relevant quote (omitted shotgun) and did not address the reality that serialization does not affect the functionality of a given firearm, nor does it render any firearm a "dangerous and unusual weapon" that is outside the scope of Second Amendment protections.

Additionally, the District Court, relying on *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010), stated that "[g]uns with obliterated serial numbers are useful for criminal activity because identifying who possessed a firearm is more difficult when the serial number is destroyed." R. 38 p. 11; App. p. 14. However, a gun's purported criminal utility does not render the same gun exempted from the Second Amendment's plain text. A gun, especially a handgun, can be useful for defensive and offensive criminal purposes. Suffice to say a handgun is typically used for both. The District Court's error was focusing primarily on the non-legitimate ways a unserialized firearm may be possessed without considering that there is no support in the

*Bruen* standard for excluding a firearm from the Second Amendment's plain text when the firearm, despite its capacity for illegitimate use, nonetheless still satisfies the Second Amendment's plain text standard. A firearm being typically used for one purpose does not mean it also, cannot be typically used for another purpose that renders the regulated conduct subject to Second Amendment protection.

In addition, an individual does not have to remove, obliterate, or alter a firearm's serial number in order to be criminally culpable under § 922(k), they only have to possess the gun.  Indeed, a serial number does not even have to be illegible to fall under the challenged statute. *See United States v. Harris*, 720 F.3d 499, 502-503 (4th Cir. 2013). Furthermore, a private citizen might possess an unserialized firearm because they received it as a gift, because they legally bought it from a non-licensed dealer, because the serial number wore away, or for any other number of innocuous, valid reasons.  *See Price*, 2022 WL 6968457, at *3.  Possessing an unserialized firearm is not inherently unlawful or inherently nefarious, and is a perfectly legitimate exercise of the fundamental right to keep and bear arms.   Indeed, § 922(k) recognizes

the innocence of such conduct – by permitting the possession of an unserialized firearm manufactured before 1968 Gun Control Act.

Further, the District Court's use of *Marzzarella*, was improper. The portion of that case the District Court cited was related to the court's weighing of the government interest and whether § 922(k) was sufficiently restrictive to serve the purported government interest of detecting illegal firearms related to crime.  614 F.3d at 98 (holding that [f]irst, we think it plain that § 922(k) serves a law enforcement interest in enabling the tracing of weapons via their serial numbers.  Section 922(k) was enacted by the Gun Control Act of 1968, Pub.L. No. 90–618, 82 Stat. 1213, 1221.16.  The objective of this Act was to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous.").  This form of analysis is the very means-end balancing the Court in *Bruen* expressly forbid.  *See e.g.*, *Bruen*, 142 S. Ct. at 2127 ("Despite the popularity of this two-step approach, it is one step too many. . . . . *Heller and McDonald* do not support applying means-end scrutiny in the Second Amendment context.  Instead, the government must affirmatively prove that its firearms regulation is

part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."). In effect, the District Court used and employed the very means-end balancing language *Bruen* rejected.

The District Court speculated as to how and why unserialized firearms are possessed. Such speculation does not fit within the *Bruen* framework and is not an appropriate basis to find that a constitutional right does not attach. The Constitution's "words and phrases were used in their normal and ordinary as distinguished from technical meaning." *United States v. Sprague*, 282 U.S. 716, 731 (1931). The Second Amendment plainly, textually protects the right to keep and bear arms – to possess. Section 922(k) plainly regulates possession or receiving a firearm. Textually, the Second Amendment "covers" the conduct § 922(k) regulates. The District Court erred in not proceeding to the second *Bruen* prong.

### C.  Mr. Reyna Possessed a Handgun, a Firearm Commonly Used for Defensive Purposes.

In *Heller*, the Court found that the Second Amendment protected only "the carrying of weapons" in common use at the time of the founding "as opposed to [weapons] that are highly unusual in society at large." *Bruen*, 142 S. Ct. at 2143 (internal citations omitted). *Bruen*

expanded such weapons to those "that are unquestionably in common use *today*." *Id.* (emphasis added).

The District Court's reasoning focused on whether a firearm lacking a serial number is typically possessed by law-abiding persons for law-abiding reasons. R. 38 p. 13; App. p. 16. The District Court erred in not considering § 922(k)'s substantial breadth, covering any firearm possessed or received, including handguns. Indeed, the District Court ignored *Heller's* reasoning that handguns are as "an entire class of arms[,]" the predominant and preferred self-defense firearm. 554 U.S. at 628-629. In effect, handguns, which § 922(k) regulates, *are* typically used by law-abiding persons for law-abiding reasons. *Heller* noted that handguns are the most popular individual self-defense weapon in the United States. *See id. Bruen*, reinforced this point and noted the ubiquity of handguns and the weapon's salient and constitutionally legitimate function in American home and personal defense. 142 S. Ct. at 2128. "Thus, our earlier historical analysis sufficed to show that the Second Amendment did not countenance a complete prohibition" on the use of "the most popular weapon chosen by Americans for self-defense in the home." *Id.*; *see also McDonald v. City*

*of Chicago*, 561 U.S. 742, 767-68 (2010) (internal citation omitted) (cleaned-up) ("Explaining that the need for defense of self, family, and property is most acute in the home, [the Court] found that this right applies to handguns because they are the most preferred firearm in the nation to keep [under the Second Amendment] and use for protection of one's home and family[, therefore,] . . .[t]he American people have considered the handgun to be the quintessential self-defense weapon."). That handguns are weapons in common use today for self-defense, and in fact are commonly used to effectuate that purpose justifies reversal of the District Court's ruling.

In addition, in *Bruen*, the Court endorsed a broader theory of the Second Amendment's reach as to how, why, and where a firearm may be possessed beyond the confines of the home.  *See e.g.*, 142 S. Ct. at 2135 (emphasis added) (commenting on the respondent's concession "that the Second Amendment *guarantees a general right* to public carry").  The District Court failed to consider this general right to public carry and whether § 922(k) restricts or burdens the exercise of this right in the first instance.

Furthermore, the District Court's ruling relied on language in the *Heller* opinion, which cited back to *Miller*.   *See supra* p. 23. Specifically, the District Court found that the Second Amendment does not "extend to arms that aren't typically possessed by law-abiding citizens for lawful purposes." R. 38 p. 13; App. p. 16.  That reasoning can be found in *Heller*, but as a citation to *Miller*.  *See* 554 U.S. at 625 (emphasis added) (the Court, therefore, reads "*Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as *short-barreled shotguns*.  That accords with the *historical understanding* of the scope of the right.").  As stated above, the cited language in *Miller* does not address constitutional text, but historical tradition.  The District Court's reasoning cannot be squared with the Second Amendment's plain text which expressly protects the right to keep, to possess, a handgun for defensive reasons.  Stated differently, the District Court failed to consider that the challenged statute, applying broadly to any firearm possession, affects the right to possess publicly a handgun for self-defense under the Second Amendment's plain text. *See Bruen*, 142 S. Ct. at 2134-35 (the "textual elements" of the Second

Amendment's operative clause --- "the right of the people to keep and bear Arms, shall not be infringed" and "guarantee the individual right to posses and carry weapons [publicly] in case of confrontation.").

The District Court found that the Second Amendment does not apply to arms that are not "typically possessed by law-abiding citizens for lawful purposes."  R. 38 p. 13; App. p. 16.  The District Court supported that decision by noting that "[n]othing in [*Bruen*] undermines *Heller's* discussion of [the] textual limits on types of firearms."  R. 38 p. 11 n.3; App. p. 14 n.3

*Bruen* may not have undermined *Heller*, but it certainly expanded *Heller's* reach.  For example *Bruen*, however, stated that the Second Amendment extends, "prima facie, *to all instruments that constitute bearable arms*, even those that were not in existence at the time of the founding.  Thus, even though the Second Amendment's definition of arms is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense."  142 S. Ct. at 2132 (emphasis added).  All instruments that constitute bearable arms would, at minimum include handguns, with or without a serial number marshaled for defensive purposes.  The District

Court erred in not considering *Bruen's* extension of handgun possessory rights outside of the home and how that expansion did enlarge the ambit of the Second Amendment' plain text.  The District Court's reference that *Bruen* did not undermine *Heller* belies the fact that *Bruen* changed by expanding the *Heller* analysis as to the Second Amendment's protective scope.

### D.   Mr. Reyna Remains Part of "the People" the Second Amendment Protects.

The District Court found that firearms, including handguns, without a serial number are not typically possessed by law-abiding persons for law-abiding reasons.  R. 38 p. 13; App. p. 16.  Indeed, the District Court's rationale placed significant weight on finding that an obliterated serial number removes the firearm and a defendant from Second Amendment protection. This Court has addressed the scope of the term "the People" in the Second Amendment and found that the Second Amendment confers protection on all Americans.  *See Meza-Rodriguez*, 798 F.3d at 669 (noting that "[w]hile some of *Heller's* language does link Second Amendment rights with the notions of law-abiding citizens and members of the political community those passages did not reflect an attempt to define the term people.  We are reluctant

to place more weight on these passing references than the Court itself did.  Other language in *Heller* supports the opposite result: that all people, including non-U.S. citizens, whether or not they are authorized to be in the country, enjoy at least some rights under the Second Amendment.").

To that end, The Second Amendment, along with the First, Second, Fourth, and Ninth, in the Bill of Rights refers to "the people." Within the Constitution, "the people" is a "term of art"—wherever it occurs, "the term unambiguously refers to all members of the political community, not an unspecified subset."  *Heller*, 554 U.S. at 580-81 (emphasis added); *accord United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990) (The term "the people" "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.").  The Second Amendment right—no less than the others mentioned above—"belongs to all Americans."  *Heller*, 554 U.S. at 581. Indeed, the Second Amendment is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U. S. at 780; *see also United States v.*

34

*Hicks*, W:21-CR-00060-ADA, 2023 WL 164170, at *3 (W.D. Tex. Jan. 9, 2023) (abrogating 922(n) under the *Bruen* Second Amendment framework and reasoning that "defining 'the people' as law-abiding, responsible citizens would lead to absurd results. The Government surely doesn't believe that someone ticketed for speeding—thus, not abiding by the law—should lose their Second Amendment rights. Nor should the person who negligently (irresponsibly) forgets to set out the Wet Floor sign after mopping lose their Second Amendment rights. Of course not. Whether intended or not the absurd consequences are there all the same.").

As stated in *Rahimi*, the term law-abidance as used in *Heller* and *Bruen* should not be interpreted as a restriction on the scope of protection under the Second Amendment's plain text:

> Further, the Government's proffered interpretation of "law-abiding" admits to no true limiting principle. Under the Government's reading, Congress could remove "unordinary" or "irresponsible" or "non-law-abiding" people—however expediently defined—from the scope of the Second Amendment. Could speeders be stripped of their right to keep and bear arms? Political nonconformists? People who do not recycle or drive an electric vehicle? . . . .

> Neither *Heller* nor *Bruen* countenances such a malleable scope of the Second Amendment's protections; to the contrary, the Supreme Court has made clear that the Second

Amendment right is exercised individually and belongs to all
Americans.    Rahimi, while hardly a model citizen, is
nonetheless among the people entitled to the Second
Amendment's guarantees, all other things equal.

61 F.4th at 453 (internal quotations in the original); *see also Kanter v.
Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting) (stating
that the proper way to assess the scope of a negative right including the
Second Amendment is to consider the power and authority of the
governmental entity to deprive or interfere with the exercise of the right,
rather than to consider what *people* may be excluded.).  This Court too,
should not find that Mr. Reyna is categorically excluded from Second
Amendment protection.

## VIII. CONCLUSION

For the foregoing reasons, Mr. Reyna asks this Court to reverse
the District Court's denial of his motion to dismiss.  Specifically, this
Court should reverse the District Court's flawed application of *Bruen's*
first prong concluding that § 922(k) does not regulate conduct covered
by the Second Amendment's plain text.  Mr. Reyna asks this Court to
remand for proper consideration of the remaining portion of the *Bruen*
test --- whether § 922(k) is consistent with the nation's history and

tradition of firearm regulation.  Section 922(k)'s regulation of receiving or possessing a firearm falls within the Second Amendment's plain text of the right to keep and bear arms.  The District Court's finding that the statute does not was in legal error.

## IX.  STATEMENT CONCERNING ORAL ARGUMENT

Pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure and Circuit Rule 34(f), Mr. Reyna requests oral argument. As stated above, to Mr. Reyna's knowledge, the issue raised on appeal is a matter of first impression for this Court.  Mr. Reyna submits that oral argument will assist this Court's review of the District Court's conclusion.

Date:  April 26, 2023

Respectfully submitted,

Northern District of Indiana
Federal Community Defenders, Inc.

By:    s/Chad J. Pennington
2929 Carlson Drive Suite 101
Hammond, IN  46323
Phone: (260) 422-9940
Fax: (260) 422-9954
E-mail: Chad_Pennington@fd.org

37

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7)(C)

The undersigned certifies that this brief complies with the volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(C) and Circuit Rule 32 in that it contains 7,448 words as shown by Microsoft Word 2016 used in preparing this brief.

Date: <u>April 26, 2023</u>

<u>s /Chad J. Pennington</u><br>Chad J. Pennington, Attorney for<br>Defendant-Appellant Jose Reyna

## CERTIFICATE OF SERVICE

I hereby certify that on <u>April 26, 2023</u>, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s /Chad J. Pennington</u>
Chad J. Pennington, Attorney for
Defendant-Appellant Jose Reyna

No. 23-1231

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,
        Plaintiff-Appellee,

        v.

JOSE REYNA
        Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Indiana
Case No. 3:21-CR-41
The Honorable Judge Robert L. Miller, Jr.

ATTACHED REQUIRED SHORT APPENDIX
OF DEFENDANT-APPELLANT JOSE REYNA

Northern District of Indiana Federal
Community Defenders, Inc.
Chad J. Pennington
Attorney for Defendant-Appellant
Jose Reyna
2929 Carlson Drive Suite 101
Hammond, IN  46323
Telephone: (260) 422-9940
Fax: (260) 422-9954
Email: Chad_Pennington@fd.org

## TABLE OF CONTENTS FOR APPENDIX

1.   Certificate of Compliance with Circuit Rule 30.........................................App. 1

2.   *Indictment* [DE 1] entered May 12, 2021 in the United States District
     Court for the Northern District of Indiana, South Bend Division in
     Case No. 3:21-CR-41 ...................................................................................App. 2

3.   *Opinion and Order* [DE 38] entered December 15, 2022 in the United
     States District Court for the Northern District of Indiana, South Bend
     Division in Case No. 3:21-CR-41 ..............................................................App. 4

4.   *Judgment in a Criminal Case* [DE 47] entered January 30, 2023 in the
     United States District Court for the Northern District of Indiana,
     South Bend Division in Case No. 3:21-CR-41 .........................................App. 17

## CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30

The undersigned counsel hereby states that all of the materials required by Circuit Rule 30(a) and 30(b) are included in the Appendix.

Date: <u>April 26, 2023</u>

<u>s /Chad J. Pennington</u>
Chad J. Pennington, Attorney for
Defendant-Appellant Jose Reyna

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **INDICTMENT** |
| | ) | (One Count) |
| | ) | |
| v. | ) | Case No.: 3:21-cr- 41 RLM |
| | ) | |
| | ) | |
| JOSE REYNA | ) | 18 U.S.C. § 922(k) |

## THE GRAND JURY CHARGES:

On or about February 17, 2021, in the Northern District of Indiana,

## JOSE REYNA,

defendant herein, knowingly possessed a firearm that had been shipped and

transported in interstate or foreign commerce from which the manufacturer's

serial number had been removed, altered, and obliterated.

All in violation of Title 18, United States Code, Section 922(k).

## FORFEITURE ALLEGATION

1.    The allegations contained in the Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c).

2.    Upon conviction of the offense set forth in the Indictment, the defendant, **JOSE REYNA,** shall forfeit to the United States pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), any firearms and ammunition involved in the commission of the offense.

All pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).

Dated:  May 12, 2021

A TRUE BILL:

*s/ Grand Jury Foreperson*
Grand Jury Foreperson

APPROVED BY:

GARY T. BELL
ACTING UNITED STATES ATTORNEY

By:    *s/ Frank E. Schaffer*
Frank E. Schaffer
Assistant United States Attorney

2

App. 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:21-CR-41 RLM-MGG |
| | ) | |
| | ) | |
| JOSE REYNA | ) | |

OPINION AND ORDER

Jose Reyna was indicted with one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). Mr. Reyna entered a guilty plea and moved to dismiss the criminal case just before sentencing. He argues that § 922(k) violates the Second Amendment to the U.S. Constitution in light of New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022). After briefing from the parties, the court held oral arguments on December 5. The court denies Mr. Reyna's motion to dismiss [Doc. 28] because the plain text of the Second Amendment doesn't reach a handgun without a serial number.

BACKGROUND[1]

St. Joseph County Police Department officers pulled Jose Reyna over on February 17, 2021, because of a defective headlight. Mr. Reyna presented the

---

[1] The court takes these facts from the presentence investigation report prepared by the U.S. Probation Office for Mr. Reyna's sentencing. [Doc. 22]. Mr. Reyna pleaded guilty to the offense and later filed a notice of no objection to the presentence investigation report. [Doc. 21].

App. 4

officers with a picture ID but not a driver's license. His car smelled of marijuana. The officers searched his car and found a handgun with the serial number scratched off as well as marijuana and other supplies suggestive of marijuana distribution.

Mr. Reyna was arrested and agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives eventually interviewed him. Mr. Reyna told the ATF officers that he sells marijuana and carried the handgun to protect himself. He admitted to having scratched off the handgun's serial number with a knife and described instances when he fired the gun to scare of adversaries when drug deals had gone sour.

A grand jury indicted Mr. Reyna on one count of possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k). The indictment charged Mr. Reyna with unlawful possession on or about February 17, 2021. At that time, he had one adult misdemeanor conviction and one juvenile misdemeanor adjudication. Mr. Reyna was in state custody when indicted and was arrested on the federal warrant about one year later in May 2022. He pleaded guilty without a plea agreement and was to be sentenced on October 19.

Mr. Reyna filed this motion to dismiss on October 17. Mr. Reyna argues that his case should be dismissed because § 922(k) violates the Second Amendment. He contends that § 922(k) regulates possession of firearms, which is covered by the Second Amendment's plain text, and that the government hasn't shown, and can't show, that such a regulation is consistent with our

2

nation's history and tradition of firearm regulation. *See* <u>N.Y. State Rifle & Pistol Ass'n v. Bruen</u>, 142 S. Ct. 2111 (2022).

S<small>TANDARD OF</small> R<small>EVIEW</small>

A defendant ordinarily must move to dismiss an indictment for failure to state an offense in a pretrial motion, Fed. R. Crim. P. 12(b)(3)(B)(v), but a court can consider an untimely motion if the defendant shows good cause. Fed. R. Crim. P. 12(c)(3). A defendant can withdraw a guilty plea after entering a guilty plea and before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Guilty pleas "should not lightly be withdrawn," but can be withdrawn for factual or legal innocence or if the defendant didn't enter a plea knowingly and voluntarily. <u>United States v. Brown</u>, 973 F.3d 667, 715 (7th Cir. 2020).

A<small>NALYSIS</small>

Mr. Reyna argues that his entire case must be dismissed because the statute he was charged with and to which he pleaded guilty impermissibly burdens the Second Amendment right to keep and bear arms. He raises this argument in light of <u>New York State Rifle & Pistol Assoc'n v. Bruen</u>, 142 S. Ct. 2111 (2022), which was decided shortly before he entered a guilty plea, and which clarified how courts are to evaluate Second Amendment challenges to gun regulations. If his argument is correct and § 922(k) violates the Second Amendment, his claim to legal innocence is fair and just reason for him to

3

App. 6

withdraw his guilty plea and for the court to grant his motion to dismiss the indictment. The government argues that because N.Y. State Rifle was decided before Mr. Reyna entered his guilty plea, this isn't the sort of case in which constitutional law changes between a guilty plea and sentencing. *See* United States v. Mays, 593 F.3d 603, 607 (7th Cir. 2010). This is no reason to dismiss Mr. Reyna's motion without reaching the merits: successfully showing that § 922(k) is unconstitutional would show that his guilty plea wasn't knowing or voluntary, which is itself good reason to grant a motion to withdraw his guilty plea and then dismiss the case.

Before N.Y. State Rifle, courts coalesced around a two-step test for Second Amendment challenges to gun regulations. Id. at 2125–2126. This two-step test first asked whether the regulated conduct was within the Second Amendment's scope. Id. If so, courts applied some form of means-ends scrutiny to the challenged regulation. Id.

The N.Y. State Rifle decision eliminated means-ends scrutiny and clarified that Second Amendment challenges are based on the Second Amendment's text as well as history and tradition. Id. at 2129–2130. A regulation doesn't offend the Second Amendment if the Second Amendment's plain text doesn't cover the regulated conduct. Id. If the Second Amendment's plain text covers the regulated conduct, the conduct is presumptively protected, and the government bears a burden of showing that the regulation is consistent with history and tradition. Id. Only if the government affirmatively shows that the regulation is equivalent

4

or analogous to well-established historical regulations can the regulation survive Second Amendment scrutiny. Id. at 2127, 2130.

Mr. Reyna argues that § 922(k)'s regulated conduct is presumptively protected because the Second Amendment's plain text covers it, and that the government hasn't shown that § 922(k) is consistent with history and tradition. The government responds that § 922(k)'s regulated conduct isn't covered by the Second Amendment's plain text, for a few different reasons, and that if § 922(k) regulates protected conduct, the regulation is justified by various laws regulating guns and gunpowder.

The parties raise as a threshold issue whether Mr. Reyna can bring a facial challenge to § 922(k). To succeed on a facial challenge, a party must show that a statute is unconstitutional in all applications. City of L.A. v. Patel, 576 U.S. 409, 415, 418 (2015). Mr. Reyna contends that "§ 922(k) is unconstitutional in all of its applications because it cannot satisfy the Bruen test." [Doc. 37]. The government argues that Mr. Reyna is barred from bringing a facial challenge, relying on Baer v. Lynch, 636 F. App'x 695, 697 (7th Cir. 2016). The defendant in Baer argued that statutes banning firearm possession by felons who are no longer dangerous facially violated the Second Amendment. Id. The court rejected this argument, explaining that "Second Amendment claims cannot rest on a facial overbreadth challenge . . . . [Defendant] cannot challenge the federal and state statutes on the ground that they 'may conceivably be applied unconstitutionally to others, in other situations.'" Id. (citing United States v.

App. 8

<u>Skoien</u>, 614 F.3d 638, 645 (7th Cir. 2010) (en banc); <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 610 (1973)).

Unlike the defendant in <u>Baer v. Lynch</u>, Mr. Reyna's facial argument doesn't depend on whether applying the law to some subset of people other than him might violate the Second Amendment, so it's not a facial overbreadth argument. His facial challenge requires showing that every application of the law is unconstitutional. That's the sort of argument Mr. Reyna can bring, so Mr. Reyna's motion doesn't fail for being a facial challenge. *See* <u>City of L.A. v. Patel</u>, 576 U.S. at 415 (explaining that a Second Amendment facial challenge was allowed in <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008)).

*Whether the Second Amendment's Plain Text Covers § 922(k)'s Regulated Conduct.*

The first step of a Second Amendment challenge is deciding whether the regulated conduct falls within the scope of the Second Amendment's plain text. <u>N.Y. State Rifle & Pistol Ass'n v. Bruen</u>, 142 S. Ct. at 2129–2130.

The Second Amendment reads in full, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment's plain meaning depends on how voters at the time of ratification would understand the normal meaning of words and phrases, as well as the idiomatic meaning of words and phrases. <u>District of Columbia v. Heller</u>, 554 U.S. 570, 576–577 (2008).

App. 9

The text, read as a whole, "guarantee[s] the individual right to possess and carry weapons in case of confrontation." Id. at 592. Keeping arms means the right to possess arms for self-defense in the home, id. at 628–629, and carrying arms means the right to possess arms for self-defense in public. N.Y. State Rifle, 142 S. Ct. at 2122. Second Amendment rights are individually held, as indicated most clearly by the text's reference to "the people," District of Columbia v. Heller, 554 U.S. at 579–581. But the plain text also reveals that the Second Amendment has limits; the very same phrase that indicates an individual right — "the people" — also limits the Second Amendment right to members of the political community and excludes criminals. Id. at 580; Range v. Att'y Gen. U.S., 53 F.4th 262, 266, 284 (3d Cir. 2022) (per curiam) (citing N.Y. State Rifle, 142 S. Ct. at 2131); see also United States v. Yancey, 621 F.3d 681, 684–685 (7th Cir. 2010). The Second Amendment's text doesn't protect keeping and bearing any weapon in every way possible. District of Columbia v. Heller, 554 U.S. at 626–627. A weapon generally is covered if a person can carry it, N.Y. State Rifle v. Bruen, 142 S. Ct. at 2132, but not if the weapon is uncommon or unusually dangerous or not typically used by law-abiding people for lawful purposes. Id. at 2128. (citing District of Columbia v. Heller, 554 U.S. at 626, 627; United States v. Miller, 307 U.S. 174, 179 (1939)).

The first step under N.Y. State Rifle asks about the regulated conduct, so the court must determine how specifically or generally to define § 922(k)'s regulated conduct: is it mere "possession of a firearm" or "possession of a firearm with an obliterated serial number"?

App. 10

Mr. Reyna argues that § 922(k) regulates mere possession. He relies on United States v. Price, No. 2:22-cr-00097, 2022 U.S. Dist. LEXIS 186571 (S.D. W. Va. Oct. 12, 2022), which sustained a Second Amendment challenge to § 922(k). The Price court reasoned that § 922(k) regulated mere possession because a person could lawfully purchase or transfer a firearm, but that person suddenly becomes a criminal under § 922(k) if the serial number is destroyed. Id. at *7–8. The court used the example of a father who lawfully purchases a firearm and then destroys the serial number. The example continues with the daughter, who lawfully receives the gun from her father and displays it in his memory. She, too, unlawfully possesses the gun because its serial number is obliterated. Neither of them was made a criminal for destroying a serial number or for an unlawful purchase or transfer, so it's their possession that's regulated.

The government objects to this line of reasoning, arguing that such a reading is artificially narrow. The government relies on part on United States v. Holton, No. 3:21-CR-0482-B, 2022 U.S. Dist. LEXIS 200327, at *9 (N.D. Tex. Nov. 3, 2022). The Holton court focused on how a serial number doesn't relate to the conduct protected in Heller and N.Y. State Rifle — a serial number is unrelated to handgun possession in the home and handgun possession in public. The government further argues that Mr. Reyna could possess other guns with serial numbers under § 922(k), so mere possession of a firearm can't be the regulated conduct.[2]

---

[2]     Although it plays no role in today's decision, it's worth remembering that Mr. Reyna's possession of this particular firearm was, at least when he wasn't

Reading § 922(k)'s regulated conduct as mere possession is inconsistent with how the Supreme Court evaluates Second Amendment challenges. In <u>Heller</u>, the challenged regulation prohibited handgun possession in the home, so the Court defined the regulated conduct as handgun possession in the home. <u>District of Columbia v. Heller</u>, 554 U.S. at 628. In <u>N.Y. State Rifle</u>, the challenged regulation prohibited publicly carrying a handgun, so the Court defined the regulated conduct as publicly carrying a handgun. <u>N.Y. State Rifle v. Bruen</u>, 142 S. Ct. at 2134. In neither case did the Supreme Court distill the challenged regulation to so abstract a level as mere possession or mere carrying of a firearm.

Nor would it make sense to define regulated conduct as mere possession in light of the comparator — the Second Amendment's plain text. If § 922(k)'s regulated conduct is mere possession, any number of other challenged regulations would similarly boil down to mere possession, then promptly and automatically proceed to Step Two. For Step One to have any meaning, the regulated conduct must be defined specifically enough that it can meaningfully compare to the Second Amendment's plain text — a plain text that is more complex than mere possession. To do otherwise would be to compare the regulated conduct to the Second Amendment's bare and oversimplified text — keeping and bearing arms, without the original public meaning emphasized in <u>Heller</u> and <u>N.Y. State Rifle</u>.

---

dealing marijuana, perfectly legal. It was his own obliteration of the serial number that turned the firearm into something else.

App. 12

Having concluded that § 922(k)'s regulated conduct is "possession of a firearm with an obliterated serial number" and not "mere possession," the court turns its inquiry to whether the Second Amendment's plain text covers that conduct. Mr. Reyna argues that possession of a gun with an obliterated serial number is protected because such a gun can still be used for self-defense. Prohibiting possession of deserialized guns reduces his access to the universe of guns that can be used for self-defense. The government argues that the only purpose of a deserialized gun is to evade the law; law-abiding citizens ordinarily don't use deserialized guns for lawful purposes, keeping a serial number doesn't reduce a gun's usefulness for self-defense, and obliterating a serial number doesn't make a gun more useful for self-defense. "With or without a serial number, a pistol is still a pistol." United States v. Marzzarella, 614 F.3d 85, 94 (3d Cir. 2010).

The Heller Court made clear that the Second Amendment excludes "those weapons not typically possessed by law-abiding citizens for lawful purposes." District of Columbia v. Heller, 554 U.S. at 625 (discussing short-barreled shotguns in United States v. Miller, 307 U.S. 174 (1939)); see also id. at 623 ("Miller stands only for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons."). This limit on the Second Amendment right arises from the Second Amendment's text; the Heller Court explained that the plain meaning of "militia" and the relationship between the Second Amendment's operative clause and prefatory clause show that the Second Amendment protects common weapons used for lawful purposes. Id. at

App. 13

624–625. This limitation comes from the text of the Second Amendment, so whether a particular type of gun is typically used by law-abiding citizens for lawful purposes is a proper question at the first step of the N.Y. State Rifle analysis.[3]

Guns with obliterated serial numbers belong to "those weapons not typically possessed by law-abiding citizens for lawful purposes" so possession of such guns isn't within the Second Amendment's scope. District of Columbia v. Heller, 554 U.S. at 625. Guns with obliterated serial numbers are useful for criminal activity because identifying who possessed a firearm is more difficult when the serial number is destroyed. United States v. Marzzarella, 614 F.3d 85, 98 (3d Cir. 2010). By using a gun without a serial number, a criminal ensures he has a greater higher likelihood of evading justice. Id. Mr. Reyna might be right that a deserialized gun is just as useful for self-defense as a gun with its serial number intact, but that doesn't suggest that deserialized guns are typically used by law-abiding citizens for lawful purposes. A law-abiding citizen who uses a gun for self-defense has no reason to prefer a deserialized gun to a gun with serial

---

[3]     Nothing in N.Y. State Rifle undermines Heller's discussion of textual limits on types of firearms. The N.Y. State Rifle Court applied Heller and purported to clarify, not change, its methodology. N.Y. State Rifle v. Bruen, 142 S. Ct. at 2128–2129; id. at 2131 ("The test that we set forth in Heller and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."); id. at 2134 ("Having made the constitutional standard endorsed in Heller more explicit, we now apply that standard to New York's proper-cause requirement."); id. at 2138 ("Under Heller's text-and-history standard, the proper-cause requirement is therefore unconstitutional."); see also id. at 2161 (Kavanaugh, J., concurring) ("The Court employs and elaborates on the text, history, and tradition test that Heller and McDonald require for evaluation whether a government regulation infringes on the Second Amendment.").

App. 14

number intact. That a law-abiding citizen could use a gun with an obliterated serial number for lawful self-defense isn't evidence that guns with obliterated serial numbers are *typically* used by law-abiding citizens for lawful self-defense.

Mr. Reyna's objection that § 922(k) reduces the pool of guns available to him for self-defense doesn't change the outcome. Prohibiting possession or use of a particular type of gun might bring a regulation within the Second Amendment's scope if the class of firearms is defined by its functionality. For instance, in <u>Heller</u>, the government argued that banning all handguns was permissible because a would-be gun owner could still possess some other type of gun, like a rifle. <u>District of Columbia v. Heller</u>, 554 U.S. at 629. The Court rejected that argument because of handguns' characteristics that make them helpful and common for lawful self-defense:

> It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon. There are many reasons that a citizen may prefer a handgun for home defense: It is easier to store in a location that is readily accessible in an emergency; it cannot easily be redirected or wrestled away by an attacker; it is easier to use for those without the upper-body strength to lift and aim a long gun; it can be pointed at a burglar with one hand while the other hand dials the police. Whatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid.

<u>District of Columbia v. Heller</u>, 554 U.S. at 629.

While the prohibition in <u>Heller</u> applied to a class of guns defined by characteristics that brought them within the Second Amendment's scope (they are useful and common for lawful self-defense), the § 922(k) prohibition applies to a class of guns defined solely by a nonfunctional characteristic: the serial

number. *See* <u>United States v. Marzzarella</u>, 614 F.3d at 94 ("Furthermore, it also would make little sense to categorically protect a class of weapons bearing a certain characteristic wholly unrelated to their utility. <u>Heller</u> distinguished handguns from other classes of firearms, such as long guns, by looking to their functionality.") (citing <u>District of Columbia v. Heller</u>, 554 U.S. at 629).

That § 922(k)'s regulated conduct is outside scope of the Second Amendment is enough to decide Mr. Reyna's challenge to his indictment and guilty plea. Mr. Reyna's motion to dismiss must be dismissed on this basis so the court declines to consider whether the government's evidence of historical gun and gunpowder regulations justify § 922(k).

CONCLUSION

The Second Amendment right to keep and bear arms doesn't extend to arms that aren't typically possessed by law-abiding citizens for lawful purposes. Law-abiding citizens don't typically possess firearms with obliterated serial numbers for lawful purposes, so Mr. Reyna's indictment and guilty plea don't offend the Second Amendment. Accordingly, the court DENIES Mr. Reyna's motion to dismiss. [Doc. 28]. The court will schedule Mr. Reyna's sentencing hearing by separate order.

SO ORDERED.

ENTERED: <u>December 15, 2022</u>

 /s/ Robert L. Miller, Jr.<br>
Judge, United States District Court

App. 16

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

**UNITED STATES OF AMERICA**

                    **Plaintiff,**

      **vs.**

**JOSE REYNA**

                   **Defendant.**

**CASE NUMBER: 3:21CR41-001**

**USM Number: 01734-510**

**CHAD PENNINGTON - FCD**
**DEFENDANT'S ATTORNEY**

## JUDGMENT IN A CRIMINAL CASE

**THE DEFENDANT** pleaded guilty to count 1 of the Indictment on 7/11/2022.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offense:

| Title, Section & Nature of Offense | Date Offense Ended | Count Number(s) |
|---|---|---|
| 18:922(k) POSSESSION OF A FIREARM WITH AN OBLITERATED SERIAL NUMBER AND FORFEITURE ALLEGATION | February 17, 2021 | 1 |

The defendant is sentenced as provided in pages 2 through 7 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

Final order of forfeiture filed on 1/30/2023.

**IT IS ORDERED** that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in economic circumstances.

| |
|---|
| January 30, 2023 |
| Date of Imposition of Judgment |
| s/ Robert L. Miller, Jr. |
| Signature of Judge |
| Robert L. Miller, Jr., United States District Judge |
| Name and Title of Judge |
| January 30, 2023 |
| Date |

App. 17

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **28 months.**

The Court makes the following recommendations to the Bureau of Prisons:

The court notes that Jose Reyna spent three and a half months in state custody on a related charge.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

Defendant delivered _____ to _____ at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By: _____
DEPUTY UNITED STATES MARSHAL

App. 18

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **2 years** subject to the following conditions:

## CONDITIONS OF SUPERVISION

1.     You must not commit another federal, state, or local crime.

2.     You must not unlawfully possess a controlled substance.

3.     You must not unlawfully use any controlled substance, including marijuana, and must submit to one drug test within 15 days of the beginning of supervision and at least 2 periodic tests after that for use of a controlled substance.

4.     You must cooperate with the probation officer with respect to the collection of DNA.

5.     You must be lawfully employed full-time (at least 30 hours per week). If you are not employed full-time, you must try to find full-time employment under the supervision of the probation officer. If you become unemployed, or change your employer, position, or location of employment, you must tell the probation officer within 72 hours of the change. If after 90 days you do not find employment, you must complete at least 10 hours of community service per week until employed or participate in a job skills training program approved and directed by your probation officer.

6.     You must report in person to the probation office, in the district which you are released, within 72 hours of release from the custody of the Bureau of Prisons. You must report to the probation officer in the manner and as frequently as the court or the probation officer directs; and you must notify the probation officer within 48 hours of any change in residence, and within 72 hours of being arrested or questioned by a police officer.

7.     You must not travel knowingly outside the federal judicial district without the permission of the court. Alternatively, the probation officer will grant such permission when doing so will reasonably assure the probation officer's knowledge of your whereabouts and that travel will not hinder your rehabilitation or present a public safety risk.

8.     You must truthfully answer any inquiry by the probation officer and must follow the instruction of the probation officer pertaining to your supervision and conditions of supervision. This condition does not prevent you from invoking the Fifth Amendment privilege against self-incrimination.

9.     You must permit a probation officer to meet at your home or any other reasonable location and must permit confiscation of any contraband the probation officer observes in plain view. The probation officer will not conduct such a visit between the hours of 11:00 p.m. and 7:00 a.m. without specific reason to believe a visit during those hours would reveal information or contraband that wouldn't be revealed through a visit during regular hours.

App. 19

10.    You must not possess a firearm, ammunition, destructive device, or any other dangerous weapon (meaning an instrument designed to be used as a weapon and capable of causing death or serious bodily harm).

11.    Unless an assessment at the time of release from imprisonment or commencement of probation indicates to the court that participation is unnecessary, you must participate in a (substance abuse) and/or (mental health) and/or (anger management) treatment program or aftercare program. The court will receive notification of such assessment. You must abide by all treatment program requirements and restrictions, consistent with the conditions of the treatment provider. You will be required to participate in drug and/or alcohol testing, not to exceed 85 drug and/or alcohol tests per year. At the request of a treatment provider, probation officer, or you, the court may revise these conditions. While under supervision, you must not consume alcoholic beverages. You must pay all or a part of the costs for participation in the program, not to exceed the sliding fee scale as established by the Department of Health and Human Services and adopted by this court. Failure to pay these costs will not be grounds for revocation unless the failure is willful.

App. 20

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in this judgment.

| **Total Assessment** | **Total Fine** | **Total Restitution** |
|:---:|:---:|:---:|
| $100.00 | NONE | NONE |

The defendant shall make the special assessment payment payable to Clerk, U.S. District Court, 102 Robert A. Grant Courthouse, 204 South Main Street, South Bend, IN 46601. The special assessment payment shall be due immediately.

### FINE

No fine imposed.

### RESTITUTION

No restitution imposed.

App. 21

# FORFEITURE

The defendant shall forfeit the defendant's interest in the following property to the United States:

**• CZ USA UNKNOWN Pistol CAL: SN: Unknown**
**• 10 Rounds REMINGTON Ammunition CAL:22**

App. 22

Name: <u>JOSE REYNA</u>
Docket No.: <u>3:21CR41-001</u>

## ACKNOWLEDGMENT OF SUPERVISION CONDITIONS

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

I have reviewed the Judgment and Commitment Order in my case and the supervision conditions therein. These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)

_____     _____
Defendant                                                              Date


_____     _____
U.S. Probation Officer/Designated Witness                Date

App. 23