No. 23-1231

In the

# United States Court of Appeals
## for the Seventh Circuit

UNITED STATES OF AMERICA,
               Plaintiff-Appellee,

v.

JOSE REYNA,
               Defendant-Appellant.

On Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:21-CR-41 — Hon. Robert L. Miller, Jr., *Judge*.

## BRIEF FOR THE UNITED STATES

CLIFFORD D. JOHNSON
United States Attorney

DAVID E. HOLLAR
Assistant United States Attorney
Chief, Appellate Division

DAVID E. HOLLAR
Assistant United States Attorney
United States Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, IN 46320
(219) 937-5500

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

JURISDICTIONAL STATEMENT ............................................................ 1

STATEMENT OF ISSUE ........................................................................ 1

STATEMENT OF THE CASE ................................................................. 1

    I.    Nature of the Case ................................................................... 1
    II.   Offense Conduct ....................................................................... 2
    III.  Procedural History ................................................................ 2

SUMMARY OF THE ARGUMENT ........................................................ 4

ARGUMENT ........................................................................................ 5

       18 U.S.C. § 922(k)'s Ban on Possessing a Firearm With an
       Obliterated Serial Number Complies With the Second
       Amendment. ...................................................................... 5

    I.  Legal Background. ................................................................. 6

        A. History of Section 922(k). .................................................. 6
        B. The *Bruen* framework and burdens of proof. .................. 7

    II.  Firearms With Obliterated Serial Numbers Are Not
       Protected By the Second Amendment's Plain Text. ................. 9

        A. The right to "bear Arms" does not include the right
          to bear weapons not commonly used for lawful
          purposes. .................................................................... 9
        B. Section 922(k) precludes possessing firearms with
          obliterated serial numbers, rather than all
          handguns. .................................................................. 12

    C. Firearms with obliterated serial numbers are not commonly possessed for lawful purposes. ........................ 13

    D. Banning possession of firearms with obliterated serial numbers does not infringe any law-abiding citizen's right to self-defense. ............................................ 15

    E. Reyna's counterarguments fail to rebut this analysis. ... 17

III. Section 922(k) Is Consistent With the Nation's Historical Tradition of Gun Regulations. ................................. 19

    A. Numerous historical laws regulated the trade or registration of firearms and gunpowder. ........................ 21

    B. Section 922(k) is analogous to these historical laws. ..................................................................... 24

CONCLUSION ...................................................................... 26

# TABLE OF AUTHORITIES

## CASES

*Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984) ............. 8

*District of Columbia v. Heller*, 554 U.S. 570 (2008)................................passim

*Friedman v. City of Highland Park*, 136 S. Ct. 447 (2015) ................ 10, 11, 15

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ................................... 12, 15

*Miller v. Bonta*, No. 3:19-CV-1537 (S.D. Cal. 2022) ........................................ 22

*National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco,*
  *Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012)........................... 20, 24

*New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).....passim

*Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) ........................ 21

*United States v. Avila*, No. 22-CR-224, 2023 WL 3305934 (D. Colo.
  May 8, 2023)................................................................................................ 6, 9

*United States v. Bradley*, No. 2:22-CR-98, 2023 WL 2621352
  (S.D. W. Va. Mar. 23, 2023)....................................................................... 6, 22

*United States v. Cates*, 973 F.3d 742 (7th Cir. 2020)....................................... 5

*United States v. Harris*, 106 U.S. 629 (1883) .................................................... 6

*United States v. Harrison*, No. CR-22-328, 2023 WL 1771138
  (W.D. Okla. Feb. 3, 2023) ............................................................................ 18

*United States v. Holden*, No. 3:22-CR-30, 2022 WL 17103509
  (N.D. Ind. Oct. 31, 2022)............................................................................. 18

*United States v. Holton*, __ F. Supp. 3d __, No. 3:21-CR-482, 2022 WL
  16701935 (N.D. Tex. Nov. 3, 2022) ............................................. 6, 15, 19, 25

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010) ......... 3, 13, 14, 15, 25

*United States v. Miller*, 307 U.S. 174 (1939) .................................................... 18

*United States v. Mobley*, 956 F.2d 450 (3d Cir. 1992)................................ 14, 25

*United States v. Price*, _ F. Supp. 3d _, 2:22-CR-97, 2022 WL 6968457
    (S.D.W. Va. Oct. 12, 2022) ..................................................................... 3, 6, 17

*United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023).................................... 18

*United States v. Serrano*, No. 3:21-CR-1590, 2023 WL 2297447
    (S.D. Cal. Jan. 17, 2023) ....................................................................... 6, 15, 19

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010).................................... 10

*United States v. Tita*, No. 1:21-CR-334, 2022 WL 17850250
    (D. Md. Dec. 22, 2022) ............................................................................... 6, 19

*United States v. Trujillo*, _ F. Supp. 3d _, No. 1:21-CR-1422, 2023 WL
    3114387 (D.N.M. April 26, 2023) ................................................................... 6

*United States v. Walter*, No. 3:20-CR-39, 2023 WL 3020321
    (D.V.I. Apr. 20, 2023)....................................................................................... 6

## CONSTITUTION AND STATUTES

U.S. Const. Amend. II ........................................................................................ 9

First Amendment ............................................................................................... 8

Second Amendment ................................................................... 4, 5, 8, 9, 10

1 Revised Statutes of New Jersey 1937 (1924) ............................................... 14

2 Consolidated Supplement to the Codes and General Laws of the State of
    California 2627 (1926) ................................................................................... 14

2 General Statutes of Connecticut: Revision of 1949 (1930) ......................... 14

iv

2 General Law of Massachusetts from the Adoption of the Constitution to February 1822 (1823) ................................................................. 23

3 Laws of the Commonwealth of Pennsylvania, from the Fourteenth day of October, One Thousand Seven Hundred 240 (1810) ............................. 22

3 Compiled Laws of the State of Michigan 5859 (1929) ................................. 14

6 Statutes at Large of Pennsylvania from 1682 to 1802 (1809) .................... 21

18 U.S.C. § 922(k) ...................................................................................passim

18 U.S.C. § 924(a)(1)(B) .............................................................................. 7

720 Ill. Comp. Stat. 5/24-5 .......................................................................... 7

Crime Control Act, Pub. L. No. 101-647 § 2202(b), 104 Stat. 4789 (1990) ....... 7

Federal Firearms Act, Pub. L. No. 75-785, § 2(j), 52 Stat. 1250 (1938) ..... 7, 14

Gun Control Act, Pub. L. No. 90-618, § 102, 82 Stat. 1213 (1968) .................. 7

Ind. Code § 35-47-2-18 ................................................................................ 7

Laws of the Commonwealth of Massachusetts from November 28, 1780 to February 28, 1807, 259 (1807) ..................................................... 24

Laws of the Commonwealth of Massachusetts from February 28, 1807 to February 28, 1814, 536 (1814) ..................................................... 23

Laws of State of Maine 546 (1830) ............................................................... 24

Laws of New Hampshire 278 (1820) ............................................................. 23

Laws and Ordinances of New Netherland 1638 (1868) ................................. 21

Omnibus Crime Control and Safe Streets Act, Pub. L. No. 93-351 (1968)....... 7

Oregon Code 1930 (1925).............................................................................. 14

**OTHER AUTHORITIES**

E. Wayne Carp, *To Starve the Army at Pleasure:  Continental Administration and American Political* Culture, 1775 (1984) ................... 22

R. Spitzer, *Gun Law History in the United States and the Second Amendment,*
80 L. & Contemp. Probs. 55 (2017) .............................................. 22

David M. Kennedy et al., *Youth Violence in Boston: Gun Markets, Serious Youth Offenders, and A Use-Reduction Strategy*, 59 Law & Contemp. Probs. 147 (Winter 1996) .............................................................. 13

Webster's 1828 Dictionary of the English Language ...................................... 15

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

No. 23-1231

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JOSE REYNA,
Defendant-Appellant.

_____

On Appeal from the United States District Court
for the Northern District of Indiana

_____

BRIEF FOR THE UNITED STATES
_____

## JURISDICTIONAL STATEMENT

Appellant's jurisdictional statement is complete and correct.

## STATEMENT OF ISSUE

18 U.S.C. § 922(k) prohibits possessing a firearm with an obliterated serial number. Is this statute consistent with the Second Amendment?

## STATEMENT OF THE CASE

### I.     Nature of the Case

Defendant Jose Reyna pled guilty without a plea agreement to possessing a firearm with an obliterated serial number, in violation of 18

U.S.C. § 922(k). R. 13, 16.[1] The district court denied his motion to dismiss the charge. R. 38 (App. 4-16). The court sentenced him to 28 months' imprisonment. R. 44, 47.

## II.    Offense Conduct

Reyna dealt marijuana out of his car. PSR ¶ 6. He acquired an EAA Rockledge .22 caliber handgun and scratched off its serial number with a knife. PSR ¶¶ 5-6, 10. He carried the gun to protect himself while dealing drugs, firing it at least twice at buyers who tried to rob him. PSR ¶¶ 7, 10.

In February 2021, a police officer stopped Reyna because his car had a headlight out. PSR ¶ 4. Reyna had no driver's license and his car smelled of marijuana. PSR ¶ 4. A search of the car revealed the loaded handgun, 6 bags of marijuana, 28 methamphetamine pills, scales, and baggies. PSR ¶¶ 4-5, 12.

## III.    Procedural History

A grand jury charged Reyna with violating 18 U.S.C. § 922(k) by possessing a firearm with an obliterated serial number. App. 2-3. He pled guilty in July 2022 (R. 16), but three months later moved to dismiss the indictment, arguing Section 922(k) violates the Second Amendment in light of

---

[1] Citations to the district court record are designated "R." The presentence investigation report (R. 22) is "PSR." Reyna's brief is "Br." and the appendix attached to this brief is "App."

*New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). R. 28, at 8-14.

The district court denied the motion. App. 4-16. It concluded the conduct Section 922(k) prohibited was not covered by the Second Amendment's plain text. App. 9-13.

First, the court held the amendment's text "doesn't protect keeping and bearing any weapon in every way possible." App. 10, citing *District of Columbia v. Heller*, 554 U.S. 570, 626-627 (2008). Instead, it only "protects common weapons used for lawful purposes". App. 13, citing *Heller*, 554 U.S. at 624-625. In reaching this holding, the district court rejected the reasoning of *United States v. Price*, ___ F. Supp. 3d ___, 2:22-CR-97, 2022 WL 6968457 (S.D.W. Va. Oct. 12, 2022), which found that Section 922(k) proscribes mere possession of a firearm. App. 11-13. Instead, the district court reasoned, Section 922(k) more narrowly regulates "possession of a firearm with an obliterated serial number." App. 13.

Finally, the court concluded that firearms with obliterated serial numbers are unprotected because they are not "typically used by law-abiding citizens for lawful purposes." Instead, they are typically used "for criminal activity because identifying who possessed a firearm is made more difficult when the serial number is destroyed." App. 14, citing *United States v.*

*Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010). This gives a criminal a "higher likelihood of evading justice." App. 14.

The district court rejected Reyna's claim that Section 922(k) fell within the Second Amendment's text because it "reduce[d] the pool of guns available … for self-defense." App. 15. The court acknowledged that, in light of *Heller*, a general ban on handgun possession falls within the Second Amendment's scope. App. 15. But this was because "handguns' characteristics … make them helpful and common for lawful self-defense." App. 15, citing *Heller*, 554 U.S. at 629. On the other hand, a serial number's presence or absence is a "nonfuctional characteristic" that has no effect on a firearm's utility for self-defense. App. 15-16.

Because the district court held that firearms with obliterated serial numbers are not protected by the Second Amendment's text, it declined to consider *Bruen*'s second step, namely whether the statute was consistent with this nation's historical tradition of gun regulation. App. 16.

## SUMMARY OF THE ARGUMENT

The district court correctly denied Reyna's motion to dismiss because Section 922(k) complies with the Second Amendment. The Supreme Court has expressly stated that the Second Amendment does not protect the right to bear any and all weapons under any and all circumstances. Instead, it protects only

the right to carry firearms commonly used for lawful self-defense purposes—and then only to the extent such carriage is consistent with historical tradition.

The district court properly applied *Bruen* to the facts before it. Firearms with obliterated serial numbers are not commonly possessed by law-abiding citizens to defend themselves. Instead, they are commonly used by those engaged in criminal activity because they are harder to trace back to their owners. Law-abiding citizens remain free to possess any handgun or other firearm that has not had its serial number altered or obliterated.

Regardless, Section 922(k) is consistent with the nation's historical tradition of gun regulations. For over two centuries, American governments have regulated the trade of firearms and gunpowder. They have required marking of items to show proof of inspection and punished those who altered or obliterated proof marks. Because Section 922(k) properly follows in that long line of tradition, it complies with the Second Amendment.

## ARGUMENT

### 18 U.S.C. § 922(k)'s Ban on Possessing a Firearm With an Obliterated Serial Number Complies With the Second Amendment.

This Court reviews a district court's denial of a motion to dismiss an indictment on constitutional grounds de novo. *United States v. Cates*, 973 F.3d 742, 745 (7th Cir. 2020). It should presume a federal statute lawful unless "the

lack of constitutional authority to pass an act in question is clearly demonstrated." *United States v. Harris*, 106 U.S. 629, 635 (1883).

No federal appellate courts have weighed in on 18 U.S.C. § 922(k)'s constitutionality post-*Bruen*, but the overwhelming majority of district courts have rejected Second Amendment challenges. *United States v. Holton*, ___ F. Supp. 3d ___, No. 3:21-CR-482, 2022 WL 16701935 (N.D. Tex. Nov. 3, 2022); *United States v. Tita*, No. 1:21-CR-334, 2022 WL 17850250 (D. Md. Dec. 22, 2022); *United States v. Serrano*, No. 3:21-CR-1590, 2023 WL 2297447 (S.D. Cal. Jan. 17, 2023); *United States v. Bradley*, No. 2:22-CR-98, 2023 WL 2621352 (S.D. W. Va. Mar. 23, 2023); *United States v. Walter*, No. 3:20-CR-39, 2023 WL 3020321 (D.V.I. Apr. 20, 2023); *United States v. Trujillo*, ___ F. Supp. 3d ___, No. 1:21-CR-1422, 2023 WL 3114387 (D.N.M. Apr. 26, 2023); *United States v. Avila*, No. 22-CR-224, 2023 WL 3305934 (D. Colo. May 8, 2023); *but see Price*, 2022 WL 6968457. For the reasons explained below, this Court should likewise uphold the statute.

## I.    Legal Background.

### A.    History of Section 922(k).

Section 922(k) makes it "unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered" or "to possess or receive" any such firearm that has "at any time, been

shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(k). The statute carries a five-year statutory maximum term of imprisonment. 18 U.S.C. § 924(a)(1)(B).

Congress adopted Section 922(k)'s precursor in the Federal Firearms Act of 1938, which made it unlawful "to transport, ship, or knowingly receive in interstate or foreign commerce any firearm from which the manufacturer's serial number has been removed, obliterated, or altered." Pub. L. No. 75-785, § 2(j), 52 Stat. 1250, 1251. In 1968, Congress reenacted this prohibition through the Omnibus Crime Control and Safe Streets Act. See Pub. L. No. 93-351, § 902, 82 Stat. 197, 231. It also for the first time mandated placement of serial numbers on all new and imported firearms. Gun Control Act of 1968, Pub. L. No. 90-618, § 102, 82 Stat. 1213, 1223. Finally, the Crime Control Act of 1990 amended Section 922(k) to add a prohibition on possessing firearms with removed, obliterated, or altered serial numbers. Pub. L. No. 101-647, § 2202(b), 104 Stat. 4789, 4856. Many states also prohibit removing a firearm's serial number or possessing a firearm with an obliterated or altered serial number. See, *e.g.*, 720 Ill. Comp. Stat. 5/24-5; Ind. Code § 35-47-2-18.

## B.    The *Bruen* framework and burdens of proof.

Under *Bruen*, courts reviewing a Second Amendment challenge to a law must consider two questions. First: Does the Second Amendment's plain text cover the conduct at issue? *Bruen*, 142 S. Ct. at 2126; see also *id.* at 2134-2135

7

(considering first question as to the law challenged in *Bruen*). If it does, then second: Does the challenged law square with the nation's tradition of gun regulation. *Id.* at 2130; see also *id.* at 2135-2156 (considering second question). At the second stage of analysis, the government bears the burden to offer historical evidence supporting the challenged law. *Id.* at 2126, 2130 (comparing *Bruen*'s test to analysis of First Amendment free speech challenges).

*Bruen* did not decide who bears the burden on the first question since the parties did not dispute that the Second Amendment "right of the people to keep and bear Arms" plainly covered the law-abiding plaintiffs' right to publicly carry handguns. *Id.* at 2134. Still, analogizing to the First Amendment context, this threshold burden should rest with the challenger. This would align Second Amendment burdens with the comparable ones in the First Amendment context. There the government bears the burden of justifying restrictions imposed on the freedom of speech, but it must shoulder that burden only after the challenging party establishes that the First Amendment applies. *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 294 n.5 (1984).

Similarly therefore, Reyna must show the Second Amendment applies to—and thus presumptively protects—the weapons Section 922(k) prohibits—namely firearms from which the manufacturer imprinted serial number has been "removed, obliterated, or altered." As explained below, Reyna cannot

make this threshold showing because such arms fall outside the class of Second Amendment protected "arms," namely those commonly used for self-defense.

## II. Firearms With Obliterated Serial Numbers Are Not Protected By the Second Amendment's Plain Text.

The Second Amendment's text states in full: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II.

The first question presented in any Second Amendment case is "whether the plain text of the Second Amendment protects" the conduct the challenged statute regulates. *Bruen*, 142 S. Ct. at 2134. As part of that inquiry, the Court must decide "whether the firearms the [defendant] sought to carry publicly are within the class of 'Arms' … the people are entitled to keep and bear." *Avila*, 2023 WL 3305934, at *4 (citing *Bruen*, 142 S. Ct. at 2134; and *Heller,* 554 U.S. at 627. As explained below, Reyna sought to carry a firearm with an obliterated serial number, a weapon outside the Second Amendment protected class.

### A. The right to "bear Arms" does not include the right to bear weapons not commonly used for lawful purposes.

"[T]he Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right," which was neither "granted by the Constitution" nor "dependent upon that instrument for its existence." *Heller*, 554 U.S. at 592 (emphasis in original). Thus, the right to bear arms is "enshrined with the

9

scope [it was] understood to have when the people adopted [it]." *Id.* at 634-635. The right in question, which the Second Amendment "'elevates above all other interests,'" is the right of law-abiding, responsible citizens to use arms for self-defense." *Bruen*, 142 S. Ct. at 2131, quoting *Heller*, 554 U.S. at 635. This right, however, is not an "unlimited" "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626; see also *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) ("That *some* categorical limits are proper is part of the original meaning.") (emphasis in original).

*Heller* did not "cast doubt" on certain "presumptively lawful regulatory measures," including "prohibitions on carrying concealed weapons" and "laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-627 & n.26; see also *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion) (emphasizing that applying Second Amendment to states "does not imperil every law regulating firearms"). As one "important limitation on the right to keep and carry arms," the Amendment applies only to "the sorts of weapons" that were "in common use at the time." *Heller*, 554 U.S. at 627 (quotation marks omitted). Consequently, in deciding whether the Second Amendment applies to a given statute, the Court must decide "whether the law bans types of firearms commonly used for a lawful purpose." *Friedman v. City*

*of Highland Park*, 136 S. Ct. 447, 449 (2015) (Thomas, J., dissenting from denial of certiorari).

The Second Amendment's limit to weapons commonly used for a lawful purpose "is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627. In *Heller*, the Supreme Court held that handguns are covered "Arms" under the Amendment's text because they are "the quintessential self-defense weapon" and are "overwhelmingly chosen by American society" for that purpose. *Heller*, 554 U.S. at 628-629. By contrast, *Heller* concluded, a short-barreled shotgun is "not eligible for Second Amendment protection." *Id.* at 622. In marked contrast to handguns, short-barreled shotguns are "not typically possessed by law-abiding citizens for lawful purposes." *Id.* at 625. The Second Amendment further does not protect "weapons specifically adapted to unlawful uses and not in common use, such as sawed-off shotguns." *Friedman*, 136 S. Ct. at 449 (Thomas, J., dissenting from denial of certiorari).

In clarifying the appropriate framework for analyzing Second Amendment claims, *Bruen* reiterated the Supreme Court's previously announced principles. As in *Heller*, it first found the plaintiffs before it were "ordinary, law-abiding, adult citizens" and therefore part of the "people" the Amendment reference. *Id.* at 2134. And, critically, it next concluded that "handguns are weapons 'in common use' today for self-defense." *Ibid.*

While joining the majority opinion in *Bruen*, Justice Kavanaugh (joined by the Chief Justice) emphasized in a concurrence that "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations." *Id.* at 2162 (Kavanaugh J., concurring) (quoting *Heller*, 554 U.S. at 636). Justice Alito likewise reiterated that *Bruen* did not "disturb[ ] anything that [the Court] said in *Heller* or *McDonald* … about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 2157 (Alito, J., concurring). These opinions further reinforce the principle that weapons adapted for criminal purposes or otherwise not commonly used for self-defense remain outside the Second Amendment's scope.

## B. Section 922(k) precludes possessing firearms with obliterated serial numbers, rather than all handguns.

Reyna's brief heavily focuses (Br. 12-13) on the fact that he possessed a handgun. But *Heller* reveals that this is not the proper inquiry. There the Supreme Court stated that short-barreled and sawed-off shotguns, unlike ordinary shotguns, fall outside the Second Amendment's scope. See *Heller*, 554 U.S. at 621-625. In other words, the fact that one type of weapon (shotguns) was commonly possessed, and thus presumptively protected, did not prevent a specific subset of that type (short-barreled shotguns) from being unprotected.

Here Section 922(k) does not prohibit possession of all handguns, or even of all handguns lacking serial numbers. Instead, the only handguns—and other

firearms—affected are those which once had serial numbers that have since been "removed, obliterated, or altered." 18 U.S.C. § 922(k). Thus, the Court here must consider whether the Second Amendment protects firearms with obliterated serial numbers, rather than firearms (or handguns) writ large.

Applying *Heller* and *Bruen*, the Second Amendment's plain text does not protect firearms with obliterated serial numbers for at least two reasons: (1) Such arms are not "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625; and (2) Section 922(k) does not infringe the right to individual self-defense. *Heller*, 554 U.S. at 599 (deeming right to self-defense the Second Amendment's "central component").

## C.  Firearms with obliterated serial numbers are not commonly possessed for lawful purposes.

Firearms with obliterated serial numbers are far more akin to short-barreled or sawed-off shotguns than they are to handguns. As the Third Circuit has observed, "we … cannot conceive of a lawful purpose for which a person would prefer an unmarked firearm." *United States v. Marzzarella*, 614 F.3d 85, 99 (3d Cir. 2010), *abrogated in part on other grounds by Bruen*, 142 S. Ct. at 2111. At the same time, such firearms are valuable "to those engaged in illicit activity because the absence of serial numbers helps shield recovered firearms and their possessors from identification." *Id.* at 98; see also David M. Kennedy et al., *Youth Violence in Boston: Gun Markets, Serious Youth Offenders, and A*

*Use-Reduction Strategy*, 59 Law & Contemp. Probs. 147, 174-175 (Winter 1996) (observing only reason to obliterate a serial number is to avoid connection with a firearm, typically because it was stolen, used in a crime, or obtained in an illegal transaction). Determining "a chain of custody for a firearm greatly assists in the difficult process of solving crimes," and obliterating serial numbers makes tracing this chain "virtually impossible." *United States v. Mobley*, 956 F.2d 450, 454 (3d Cir. 1992). Thus, Section 922(k)'s burden "will almost always fall only on those intending to engage in illicit behavior." *Marzzarella*, 614 F.3d at 99.

Reyna speculates (Br. 26) that someone could obtain a firearm with an obliterated serial number through gift or inheritance. These situations, however, are far from "typical[ ]," if they occur at all. *Heller*, 554 U.S. at 625. Some states have prohibited possessing such arms for nearly a century. See, *e.g.*, 2 Consolidated Supplement to the Codes and General Laws of the State of California 2627 (1926), Act 1183, § 13 (enacted 1923); 1 Revised Statutes of New Jersey 1937 at 488-489 (enacted 1924); Oregon Code 1930 at 5498, § 72-213 (enacted 1925); 3 Compiled Laws of the State of Michigan 5859 (1929) (enacted 1927); 2 General Statutes of Connecticut: Revision of 1949 at 1550-1551 (enacted 1930). Federal law has prohibited their transport across state lines since 1938. Federal Firearms Act of 1938, Pub. L. No. 75-785, § 2(i), 52

Stats. 1250, 1251. Given these longstanding statutes, Reyna cannot show such firearms are "typically possessed by law-abiding citizens for lawful purposes."

**D.    Banning possession of firearms with obliterated serial numbers does not infringe any law-abiding citizen's right to self-defense.**

As multiple district courts have recognized, Section 922(k) does not "infringe" on the central right the Second Amendment protects: the right to individual armed self-defense. *Holton*, 2022 WL 16701935, at *4; *Serrano*, 2023 WL 2297447, at *11; see also *Heller*, 554 U.S. at 599 (deeming right to self-defense the Second Amendment's "central component"); *McDonald*, 561 U.S. at 767 (same).

"Infringe" means "[t]o break; to violate; to transgress" and "[t]o destroy or hinder." See Webster's 1828 Dictionary of the English Language. Firearms with obliterated serial numbers fall outside the Second Amendment's text because a serial number's presence in no way hinders a weapon's functioning or its self-defense capabilities. *Marzzarella*, 614 F.3d at 94. Law-abiding citizens for multiple reasons "prefer" to use handguns to defend people and property. *Heller*, 554 U.S. at 629. By contrast, firearms with obliterated serial numbers, much like sawed-off shotguns, are "not in common use" and are instead "specifically adapted to unlawful uses" as they help to evade tracing if recovered in connection to criminal activity. *Friedman*, 136 S. Ct. at 449 (Thomas, J, dissenting from denial of certiorari).

15

A person desiring to engage in individual self-defense easily can do so with a serialized firearm, which is far more readily obtained than one that has been deserialized. That same person could also select a pre-1968 or privately made firearm, neither of which is required to contain a serial number. Indeed, Reyna here was free to possess the firearm when he bought it. What he could not do was obliterate that weapon's pre-existing serial number, an act which did nothing to increase its utility for legal self-defense but did improve its utility for crime. The Second Amendment protects the former, not the latter.

Any minimal burden Section 922(k) imposes on a law-abiding citizen's right to self-defense pales in comparison to those imposed by regulations *Bruen* deemed compatible with the Second Amendment. *Bruen* clarified that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality" of the "shall-issue" firearm licensing schemes that existed in 43 states. *Bruen*, 142 S. Ct. at 2138 n.9. These schemes, "which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding citizens.'" *Ibid*, quoting *Heller*, 554 U.S. at 635. Justice Kavanaugh emphasized in his concurrence that states can constitutionally require license applicants to endure "fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements." *Id.* at 2162 (Kavanaugh, J., concurring).

If such administrative burdens on carrying firearms are permissible, then Section 922(k)'s ban on possessing the small class of firearms with obliterated serial numbers similarly does not "deny ordinary citizens their right to public carry." *Bruen*, 142 S. Ct. at 2138 n.9.

Additionally, the Supreme Court stated it was not calling into question "laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-627. Fingerprinting, paperwork disclosures, and other incidents of commercial regulation impose minimal burdens on firearms ownership without seriously hindering (*i.e.*, "infring[ing]" upon) law-abiding citizens who wish to exercise their Second Amendment right to self-defense. As an added qualification for the commercial sale of arms, Congress can require placement of serial numbers on guns for tracking purposes and, in aid of this scheme, prohibit those numbers' alteration or removal.

### E.     Reyna's counterarguments fail to rebut this analysis.

None of Reyna's counterarguments shows that the Second Amendment right encompasses the right to bear arms with obliterated serial numbers. He lists (Br. 19-21) close to a dozen federal decisions finding that conduct covered by other Federal Firearms Act provisions falls within the plain text of the Second Amendment. While the government does not agree with the analysis in many of these cases, they do not control here even if they are correct. With the exception of *Price*, 2022 WL 6968457, which is currently on appeal to the

Fourth Circuit, all of these decisions involve a blanket ban on a specific class of individuals possessing any type of firearm. See, *e.g.*, *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) (persons subject to a domestic violence restraining order); *United States v. Holden*, No. 3:22-CR-30, 2022 WL 17103509 (N.D. Ind. Oct. 31, 2022) (persons under felony indictment); *United States v. Harrison*, No. CR-22-328, 2023 WL 1771138 (W.D. Okla. Feb. 3, 2023) (unlawful users of controlled substances). Section 922(k) by contrast, restricts only a small subset of arms not typically possessed by law-abiding citizens for lawful purposes.

Reyna further contends (Br. 24) that a weapon falls within the Second Amendment's text unless it is both not in "common use" and "dangerous and unusual." Reyna misreads the law. *Heller*'s reference to weapons "typically possessed by law-abiding citizens for lawful purposes" summarized a paragraph in which the Court explained that the colonial militia "was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense." *Heller*, 554 U.S. at 624-625, quoting *United States v. Miller*, 307 U.S. 174, 179 (1939). The Court later explained that this "common use" limitation "is fairly supported by the historical tradition of prohibiting the carrying of dangerous weapons." *Heller*, 554 U.S. at 627. But the Court never suggested that a weapon not "in common use" for "lawful purposes like self-defense" is nevertheless protected unless the government

can also show it is particularly dangerous. Reyna's contrary argument fails to take *Heller*'s articulated limits at face value.

For all these reasons, nothing in Section 922(k) infringes on the right protected by the Second Amendment's text. The district court correctly recognized this fact, so the Court should uphold its judgment.

## III. Section 922(k) Is Consistent With the Nation's Historical Tradition of Gun Regulations.

Even were this Court to proceed to *Bruen*'s second step it should still affirm. Section 922(k) survives constitutional challenge because it squares with historical tradition. Although Reyna asks (Br. 6, 15) this Court to remand for the district court to analyze the second question, there is no reason to do so. The matter was fully briefed below, and this Court can itself resolve the legal issue on the existing record. Consistent with the holdings of the majority of district courts, the Court should agree that "§ 922(k) is consistent with this Nation's history and tradition of firearm regulation." *Serrano*, 2023 WL 2297447, at *12; see also *Holton*, 2022 WL 16701935, at *5; *Tita*, 2022 WL 17850250, at *7-*8.

When comparing modern and historical gun laws, courts must "reason[ ] by analogy," which "requires a determination of whether the two regulations are relevantly similar." *Bruen*, 142 S. Ct. at 2131 (quotation marks omitted). *Bruen* offered no "exhaustive survey of the features that render regulations

relevantly similar," but it established as the central inquiry, "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133. In conducting a historical inquiry, the Court must give greatest weight to the laws of "the Colonies and early Republic," as well as to the period of English law between 1660 and 1688. *Bruen*, 142 S. Ct. at 2140-2142; see also *Heller*, 554 U.S. at 594-595. Early post-ratification sources are also "a critical tool" to discern "public understanding of a legal text in the period after its enactment or ratification." *Heller*, 554 U.S. at 605 (emphasis omitted); see *id.* at 606-608 (discussing legal commentaries from 1825 and 1833).

"[A]nalogical reasoning" is not "a regulatory straightjacket." *Id.* at 2133. It "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Ibid* (emphasis in original); see also *National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196 (5th Cir. 2012) ("*Heller* demonstrates that a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue."), *abrogated in part on other grounds by Bruen*, 142 S. Ct. at 2111. "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Bruen*, 142 S. Ct. at 2133.

**A.** **Numerous historical laws regulated the trade or registration of firearms and gunpowder.**

Applying this standard, Section 922(k) is analogous to a variety of historical laws regulating firearms and gunpowder. Long before serial numbers became common, colonial and state legislatures "substantially controlled" and regulated the trade of firearms. *Teixeira v. County of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017) (en banc). For example, Connecticut banned residents from selling firearms outside the colony. *Ibid.* Virginia similarly provided that people were only at "liberty to sell arms and ammunition to any of his majesties loyall subjects inhabiting this colony." *Id.* at 685 n.18 (quotation marks omitted). At least five colonies made it a crime (with severe penalties) to sell or provide firearms or ammunition to Native Americans. *Id.* at 685 (citing 17th-century laws from Connecticut, Maryland, and Virginia); see also 6 Statutes at Large of Pennsylvania from 1682 to 1801 at 319-320 (1809) (1763 law); Laws and Ordinances of New Netherland 1638-1674 (1868) at 18-19 (1639 ordinance), 47 (1645 ordinance), 278 (1656 ordinance). All these laws show that colonial legislatures were empowered to regulate the movement of firearms between private parties.

Although serial numbers were not in common use in 1791, this appears to be due to technological constraints, not because serial numbers were thought inconsistent with the right to bear arms. Throughout the colonial and

Revolutionary era, efforts were made to mark, inventory, or otherwise account for firearms. Virginia "required the recording not only of new arrivals to the colony, but also 'arms and munitions.'" R. Spitzer, *Gun Law History in the United States and the Second Amendment*, 80 L. & Contemp. Probs. 55, 76 (2017), quoting Va. Act of Feb. 27, 1631, Act LVI. Colonies and early states also conducted censuses or musters to record which men owned guns to be used for militia purposes. See *Bradley*, 2023 WL 2621352, at *5 (collecting statutes). George Washington had all Continental Army firearms marked with insignia to prevent theft. E. Wayne Carp, *To Starve the Army at Pleasure: Continental Administration and American Political Culture,* 1775-1783, 66-67 (1984).

In addition, several states required inspection or marking of gunpowder, which "was essential to the operation of firearms at that time." *Miller v. Bonta*, No. 3:19-cv-1537 (S.D. Cal. 2022) (Dkt. 137-3, at 22) (Declaration of Prof. Saul Cornell); *cf. Bruen*, 142 S. Ct. at 2149 (citing article by Prof. Cornell). In 1795, Pennsylvania required gunpowder stored in public magazines to be proved and marked and prohibited importation, transfer, or sale of powder not appropriately marked. 3 Laws of the Commonwealth of Pennsylvania, from the Fourteenth Day of October, One Thousand Seven Hundred 240-244 (1810). In 1809, Massachusetts required inspection of all gunpowder manufactured in the commonwealth or stored in a public magazine, with the inspector marking each cask as either "Massachusetts Inspected Proof" or "Condemned" and adding

his name and the year. 2 General Laws of Massachusetts from the Adoption of the Constitution to February 1822, at 199 (1823). The law imposed a fine of between $200 and $500 on any person who sold condemned powder or "fraudulently alter[ed], or deface[d] any mark, or marks, placed by any inspector upon any cask or casks containing gunpowder." *Ibid.* New Hampshire adopted a very similar law in 1820. Laws of the State of New Hampshire; with the Constitutions of the United States and of the State Prefixed 278 (1820).

Additionally, at least two states in the early republic required gun barrels to be proved and marked and prohibited obliterating the proof marks. See *Heller*, 554 U.S. at 605 (noting "public understanding of a legal text in the period after its enactment or ratification" is "a critical tool of constitutional interpretation" (emphasis omitted)). In 1805, Massachusetts required "provers of fire arms" to "prove all musket barrels and pistol barrels" presented to them in exchange for a set fee. Laws of the Commonwealth of Massachusetts from November 28, 1780 to February 28, 1807, at 259 (1807). The prover was to "stamp" the barrel "within one and an half inches of the breech" with the prover's initials, the letters "P." and "M.," and the year—all in "letters and figures … so deeply impressed … that the same cannot be erased or disfigured." Laws of the Commonwealth of Massachusetts, *supra*, at 260. The act imposed a ten-dollar fine on anyone who manufactured "any musket or pistol, without having the barrels proved and stamped as aforesaid," or who sold, delivered,

23

or purchased an unmarked pistol manufactured in the Commonwealth. *Ibid.* Most critically, it imposed a $20-$50 fine on any person who "shall falsely forge or alter the stamp of any prover of firearms … impressed on any musket or pistol barrel." *Id.* at 261. Massachusetts slightly amended this act in 1814 but kept the provision prohibiting altering the prover's stamp. Laws of the Commonwealth of Massachusetts from February 28, 1807 to February 28, 1814, at 536-537 (1814).

Similarly, Maine in 1821 passed a law requiring the appointment of "suitable persons, to be provers of the barrels of all new, or unused firearms." Laws of the State of Maine 546 (1830). Each prover had to "in a permanent manner, mark and number every barrel by him so proved," and to provide a certificate attesting to the proof. *Ibid.* The statute imposed a ten-dollar fine on any person who "shall sell or offer for sale within this State, any new, or unused musket, rifle or pistol barrel, without having the same first proved, marked and certified." *Ibid.* And it imposed a fine of "not more than one hundred dollars, nor less than twenty dollars" for any person who "shall falsely alter the stamp or mark of the certificate of any prover of firearms." *Ibid.*

### B. Section 922(k) is analogous to these historical laws.

Although the statutes of the early republic cited above are not identical to Section 922(k), they are "relevantly similar." *Bruen*, 142 S. Ct. at 2132. They "impose a comparable burden on the right of armed self-defense." *Id.* at 2133.

Colonial and early American jurisdictions could minimally burden the right to self-defense by requiring that gunpowder be marked or weapons proved and by prohibiting citizens from altering evidence on the point. Similarly, governments today may require that firearms be serialized and that citizens executing their right to self-defense not obliterate these serial numbers. See *Holton*, 2022 WL 16701935, at *5 ("*Not removing* the serial number from a firearm" imposes a comparable burden to historical regulations.) (emphasis in original).

Section 922(k) is also "comparably justified." *Bruen*, 142 S. Ct. at 2133. Historical marking laws were designed to protect citizens by allowing unsafe barrels or powder to be traced to the inspector who affixed the markings. Section 922(k) serves similar purposes by allowing authorities to return stolen firearms to the manufacturer or lawful owner and to trace firearms used in crimes. *Marzzarella*, 614 F.3d at 98; *Mobley*, 956 F.2d at 454. Although the statutes and purposes are not historical twins, they impose comparable burdens and are "comparably justified." *Bruen*, 142 S. Ct. at 2133.

In sum, a wide panoply of laws from the Founding Era regulated or registered firearms. These statutes are historically analogous to modern serial number requirements and to Section 922(k), which aids enforcement of those regulations. Given all this, Section 922(k) is "analogous enough to pass constitutional muster." *Id.* at 2133.

## CONCLUSION

For the foregoing reasons, the Court should affirm the judgment of the district court.

Respectfully submitted,

CLIFFORD D. JOHNSON
United States Attorney

DAVID E. HOLLAR
Assistant United States Attorney
Chief, Appellate Division

By:  /s/ David E. Hollar
David E. Hollar
Assistant United States Attorney
United States Attorney's Office
Northern District of Indiana
5400 Federal Plaza, Suite 1500
Hammond, IN 46320
Email: David.hollar@usdoj.gov
(219) 937-5500