No. 23-1231

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

**UNITED STATES OF AMERICA,**
 **Plaintiff-Appellee,**

  **v.**

**JOSE REYNA**
 **Defendant-Appellant**


Appeal from the United States District Court
for the Northern District of Indiana
Case No.  3:21-CR-41
The Honorable Judge Robert L. Miller, Jr.


**REPLY BRIEF OF
DEFENDANT-APPELLANT JOSE REYNA**


Northern District of Indiana
Federal Community Defenders, Inc.
Chad J. Pennington
Attorney for Defendant-Appellant
Jose Reyna

200 E. Main Street, Suite 905
Fort Wayne, IN 46802
Telephone: (260) 422-9940
Fax: (260) 422-9954
Email: Chad_Pennington@fd.org


**Oral Argument Requested**

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-1231

Short Caption: U.S. v.        Jose Reyna

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Jose Reyna

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Chad J. Pennington        N. District of IN Fed. Comm. Defenders, Inc., 2929 Carlson Dr. Ste 101, Hammond, IN 46323

Scott J. Frankel        N. District of IN Fed. Comm. Defenders, Inc., 130 S. Main St. Ste 300, S. Bend, IN 46601

(3)     If the party, amicus or intervenor is a corporation:

    i)     Identify all its parent corporations, if any; and

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: s/Chad J. Pennington        Date: 2/8/2023

Attorney's Printed Name: Chad J. Pennington

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☒    No ☐

Address: 2929 Carlson Dr. Suite 101

Hammond, IN  46323

Phone Number: 219-937-8020        Fax Number: 219-937-8021

E-Mail Address: Chad_Pennington@fd.org

rev. 12/19 AK

# TABLE OF CONTENTS

**PAGE**

Circuit Rule 26.1 Disclosure Statement ..................................................... ii

Table of Contents ..................................................................................... iii

Table of Authorities ................................................................................. iv

Issue Presented ........................................................................................ 1

Argument ................................................................................................. 9

    1. The "commonly used" firearm by law-abiding citizens for lawful purposes test is rooted in history and tradition, not text, and the District Court erred applying that standard at *Bruen* step-one. ......... 10

    2. The common purpose for why unserialized firearms are possessed is not a valid *Bruen* step-one consideration. ............................................ 14

    3. Section 922(k)'s criminal restriction on possession is a Second Amendment infringement. .................................................................. 17

    4. Section 922(k)'s "small subset" is irrelevant for the *Bruen* step-one analysis. ............................................................................................ 20

    5. This Court should not consider the government's historical argument. .................................................................................................. 25

Conclusion ............................................................................................... 27

Certificate of Compliance with F.R.A.P. Rule 32(a)(7)(C) ......................... 28

Certificate of Service ............................................................................... 29

# TABLE OF AUTHORITIES

**CASES**                                                                         **PAGE**

*Range v. Attorney General*, 69 F.4th 96, 103 (3d Cir. 2023)................................ 10, 21

*Atkinson v. Garland*, 70 F.4th 1018, 1023 (3d Cir. 2023) ...................................... 9, 26

*District of Columbia v. Heller*, 554 U.S. 570, 582, 625, 627, 629 (2008) .......... *Passim*

*Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015) .................................. 18

*Fraser v. ATF*, --- F. Supp. 3d ---, 2023 WL 3355339, at *7 (E.D. Va. May 10, 2023)16

*McDonald v. City of Chicago*, 561 U.S. 742, 767-68, (2010)...................................... 22

*Ocean State Tactical, LLC v. Rhode Island*, No. 22-CV-246 JJM-PAS, 2022 WL 17721175, at *14 n.28 (D.R.I. Dec. 14, 2022)...................................................... 19, 22

*N.Y. Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126, 2127, 2128, 2132, 2138, n.9, 2143 (2022)............................................................................................*Passim*

*United States v. Bullock*, --- F. Supp. 3d --- 2023 WL 4232309, at *21 (S.D. Miss. June 28, 2023)................................................................................................................ 16

*United States v. Connelly*, --- F. Supp. --- 3d, 2023 WL 2806324, at *5 (W.D. Tex. Apr. 6, 2023)............................................................................................................... 21

*United States v. Marzzarella*, 614 F.3d 85, 98, 99 (3d Cir. 2010) ....................... 15, 23

*United States v. Miller*, 307 U.S. 174, (1939) .............................................................. 7

*United States v. Price*, --- F. Supp. 3d ---, 2022 WL 6968457, at *3 (S.D. W.V. Oct 12, 2022)............................................................................................................................ 21

*United States v. Rahimi*, 61 F.4th 443, 454 (5th Cir. 2023) ................................ 20-21

**STATUTES**

18 U.S.C. § 921(a)(3) ............................................................................................ 14, 22

18 U.S.C. § 922(a)(5) .................................................................................................. 16

18 U.S.C. § 922(g)(1) .......................................................................................... 10, 16

18 U.S.C. § 922(g)(3) .................................................................................................. 21

18 U.S.C. § 922(k) ................................................................................................*Passim*

**OTHER AUTHORITIES**

U.S. Const. amend. II ...........................................................................................*Passim*

## ISSUE PRESENTED FOR REVIEW

Whether the Second Amendment's plain text covers 18 U.S.C. § 922(k)'s regulated conduct.  The District Court erred in concluding that § 922(k) is not covered by the Second Amendment's plain text.

## INTRODUCTION

The Second Amendment provides, in full: "A well regulated Militia, being necessary to the security of a free State, the right of the people *to keep and bear* Arms, shall not be infringed."  U.S. Const. amend. II (emphasis added).  In *N.Y. Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2126 (2022), the Court held that when the Second Amendment's plain text covers an individual's *conduct* – the Constitution presumptively protects that conduct.  To justify a firearm regulation moving forward, the government carries an affirmative burden to demonstrate that the restriction is consistent with the national historical tradition of firearm regulation, from the time of the founding. *Id.*  Only then, may a court conclude that an individual's conduct falls outside of the Second Amendment's "*unqualified* command." *Id.* (emphasis added).

1

Mr. Reyna's direct appeal raises a narrow, but significant, inquiry: whether the conduct of possessing a firearm with an obliterated, removed, or altered serial number is subject to the Second Amendment's plain text, and consequently, review. This Court's method of resolving that inquiry is solely a matter of applying the constitutional text. History and tradition are not relevant at this stage.

The District Court erred in holding that Mr. Reyna's conduct is ineligible for Second Amendment review. Mr. Reyna submits that the Second Amendment's plain text, the uninfringeable right to keep and bear arms, covers the conduct § 922(k) regulates, in whole or part, firearm possession. As a result, the matter should be remanded to the District Court for proper consideration of whether the challenged criminal firearm restriction is supported by the nation's history and tradition of firearm regulation from the time of the Second Amendment's ratification, as required under the Second Amendment, *Bruen* framework.

Mr. Reyna is not asking this Court to resolve whether § 922(k) is historically supported in this direct appeal. That question is best left for another day, before the District Court. The District Court here

declined to review the government's historical sources, denying Mr. Reyna's dismissal motion at the first part of the *Bruen* analysis.

Accordingly, review by this Court of the government's unreviewed proffered history is premature. Further, because the government carries an affirmative evidentiary burden under *Bruen* to demonstrate that the challenged firearm regulation is historically consonant, the District Court is the better situated tribunal to develop the evidentiary record and rule in the first instance on what sources the government may admit satisfying its evidentiary burden, and whether that admitted evidence is sufficient to meet the government's affirmative burden. Typically, the District Court decides questions of evidentiary submission and adequacy first, the same should apply to the *Bruen* framework. Additionally, a decision by the District Court first as to historical evidence will facilitate any subsequent review by this Court of the proffered historical evidence applying the appropriate evidentiary standard of review determined by this Court – likely an abuse of discretion.

It is important to note at the outset that the government spends a substantial portion of its response offering irrelevant, atextual firearm

social literature and pre-*Bruen* and even pre-*Heller*[1] case law excerpts

opining on the law enforcement efficacy of firearm serial numbers.

First, Mr. Reyna is not suggesting firearm serial numbers are

unimportant or arguing firearm serial numbers have no benefit to law

enforcement.  Firearm serial numbers may very well have law

enforcement value and utility.  But, a firearm's serial number's social

value is not the question.  The question, rather, here is solely whether

the conduct of possession of a firearm with the serial number gone falls

within the ambit of the Second Amendment's plain text – the right to

keep and bear arms.  Whether serial numbers play an important law

enforcement function has no bearing on that inquiry.

In addition, and importantly, the Court since *Heller* has cautioned

that the Second Amendment's protections are coextensive, and no less

fulsome, than other Bill of Rights protections.  In our system of

constitutional law, the exercise of state power is militated by robust

individual rights – that is the same under the Second Amendment.

Absent the Fourth Amendment, law enforcement investigations

---

[1] Referring to *District of Columbia v. Heller*, 554 U.S. 570 (2008).

assuredly would be eased, and trial evidence admission enhanced. Absent the Fifth Amendment, the scope of available admissible inculpatory statements would be surely aggrandized.  Absent the Sixth Amendment and the benefit of trial counsel, the executive branch's relative trial advantage would be improved.  The same is true here, under the Second Amendment.  Firearm serial numbers may benefit law enforcement, they may have social value, and their regulation may reflect a sound legislative crime control policy  – but balancing the state's interest is not the lodestar for judicial review of a challenged firearm restriction under the Second Amendment.  Indeed, after *Bruen*, the balancing of the state's purported interest is not part of the Second Amendment calculus.

The Court has concluded that the Second Amendment affords an individual right and that right places certain limitations on the exercise of state power.  Those limitations are the product of text and history under *Bruen*, nothing more.  There may be a law enforcement cost to a stronger individual Second Amendment right, however, the same is true of every Bill of Rights protection, and indeed it is those circumscriptions of state power which is the very purpose of constitutional protection and

limited governance.  The Second Amendment's unqualified protection demands no less treatment.

## SUMMARY

This Court should remand.  The District Court based its decision on *Bruen* step-one, but to the extent it consider the Court's recent Second Amendment jurisprudence, it cited case law language explaining the historical, not textual, scope of the Second Amendment.

The challenged statute, § 922(k), provides that "[i]t shall be unlawful for any person knowingly to transport, ship, or receive . . . any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered . . . ."  In effect, the conduct § 922(k) regulates includes the possession and receipt of firearms, which plainly falls within the Second Amendment's "keep and bear" arms text.

The District Court concluded that "the Second Amendment right to keep and bear arms doesn't extend to arms that aren't typically possessed by law-abiding citizens for lawful purposes.  Law abiding citizens don't typically possess firearms with obliterated serial numbers

for lawful purposes, so Mr. Reyna's indictment . . . [does not] offend" the Second Amendment framework.[2] App. p. 16. Relying on *Heller*, the District Court stated that "[t]his limitation comes from the text of the Second Amendment, so whether a particular type of gun is typically used by law-abiding citizens for lawful purposes is a proper question at the first step of [*Bruen*] analysis." App. p. 14. The District Court erred. This cited language in *Heller* related to the Court's historical analysis, *Bruen* step-two, not its *textual* analysis: "[the Court] therefore reads [*United States v. Miller*, 307 U.S. 174 (1939)] to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. *That accords with the historical understanding of the scope of the right*."). 554 U.S. at 625. The District Court placed dispositive weight on *Heller*, but the cited language relates to the *Bruen* step it declined to review.

---

[2] "R" refers to the District Court docket entries. "DE" refers to the docket entries before this Court. "App." refers to the short appendix attached in support of Mr. Reyna's opening brief.

The same is true of the District Court's use of *Bruen*. The District Court cited to *Bruen*, page 2128, to support its flawed ruling that the Second Amendment does not "protect keeping and bearing any weapon in every possible way" and does not offer protection "if not if the weapon is uncommon or unusually dangerous or not typically used by law-abiding people for lawful purposes." App. p. 10. However, the portion of *Bruen*, page 2128, cited by the District Court stated that *Heller* "protected an individual right to armed self-defense" and the Court "*relied on the historical understanding of the Amendment to demark the limits on the exercise of that right.*" *Id.* (internal citations omitted). The Court further commented that in *Heller*, it "assessed the lawfulness of that handgun ban *by scrutinizing whether it comported with history and tradition.*" *Bruen*, 142 S. Ct. at 2128 (emphasis added) (analyzing *Heller* part III, the Court's historical discussion).

Though the District Court grounded its decision in constitutional text, the cited language reflected the Court's historical analysis. Remand is required given the District Court's failure to properly apply the *Bruen* two-step standard.

## ARGUMENT IN REPLY

The government argues that the Second Amendment does not protect firearms with an obliterated, altered, or removed serial number. *See* DE 19, p. 9.[3]  *Id.*  As set forth below, the government's arguments fail.

As an initial matter, however, the government argues that Mr. Reyna carries the burden at the first part of *Bruen's* analysis.  *See* DE 19, pp. 7-8.  Unlike the historical burden, the Court did not expressly state who carried the textual burden.  If this Court concludes that Mr. Reyna carries the step-one *Bruen* burden, his burden is limited to showing that § 922(k)'s regulated conduct is covered by the Second Amendment's plain text. 142 S. Ct. at 2126.  Nothing more.  If § 922(k)'s regulated conduct is covered by the Second Amendment's plain text, then the statute is presumptively protected subject to history and tradition.  Mr. Reyna does not have a burden to show § 922(k)'s regulated conduct is presumptively protected, he simply must show

---

[3] The government does not argue that Mr. Reyna is not among the people the Second Amendment protects.  Mr. Reyna agrees that this matter can be resolved, if necessary, on remand as a question of history consistent with this Court's opinion in *Atkinson v. Garland*, 70 F.4th 1018, 1023 (7th Cir. 2023).

congruence with the constitutional text. The "presumptive" language refers to the government's step-two *Bruen* burden to meet once the constitutional protection attaches. *See* DE 19, p. 8.

1.  **The "commonly used" firearm by law-abiding citizens for lawful purposes standard is rooted in history and tradition, not text, and the District Court erred applying that standard at Bruen step-one.**

Like the District Court, the government claims the Second Amendment "does not include the right to bear weapons not commonly used for lawful purposes." DE 19, p. 9. This is a question to be resolved at *Bruen* part-two based on historical evidence.

To begin, in *Heller*, the Court concluded that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." 554 U.S. at 582. All instruments must include firearms that are not in common use for lawful purposes. *Accord Range v. Attorney General*, 69 F.4th 96, 103 (3d Cir. 2023) (citations removed) (finding 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) unconstitutional as-applied) (the court turning to "the easy question: whether § 922(g)(1) regulates Second Amendment conduct. It does."). Moreover, not commonly used for lawful purposes, does not mean a firearm

categorically cannot be used lawfully.  Further, the term common

versus uncommon implies the weighing of some evidence to determine

commonality against some standard or metric.  This algins with *Bruen*

part two where a quantum of historical evidence is measured against

the historical practice of firearm restriction.  Weighing whether or how

a firearm is commonly used lawfully does not imply a straight textual

analysis as *Bruen* requires at step-one.[4]

In addition, in *Bruen*, the Court noted that though the Second

Amendment's "definition of arms is fixed according to historical

understanding, that general definition *covers* modern instruments that

facilitate armed self-defense." 142 S. Ct. at 2132.  A firearm, including a

handgun, with a removed serial number certainly may facilitate armed

self-defense.  Whether a deserialized firearm may be regulated or

excluded for self-defense, is again, a *Bruen* part-two analysis.

In addition, as stated above, the "commonly used" language relied

upon by the District Court and offered by the government is a historical

---

[4] If this Court is inclined to find that the "common use" language applies at step-one, it represents a question of fact that should be remanded for an evidentiary hearing.  Mr. Reyna believes the question should be resolved through evidence, but at *Bruen* step-two.  Either way, without evidence, this Court should remand to the District Court to make an evidence-based finding as to commonality.

limitation, used at *Bruen's* second phase.  *See Heller*, 554 U.S. at 625 (emphasis added) ("We therefore read [*Miller*] to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the *historical understanding* of the scope of the right."); *see also id.* at 627 (emphasis added) (citations removed) ("*Miller* said, as we have explained, that the sorts of weapons protected were those in common use at the time. We think that limitation is fairly supported by the *historical tradition* of prohibiting the carrying of 'dangerous and unusual weapons.'"); *see also Bruen*, 142 S. Ct. at 2128 (emphasis added) (prefacing the above language from *Heller* with: "After holding that the Second Amendment protected an individual right to armed self-defense, we also relied on the *historical understanding* of the Amendment to demark the limits on the exercise of that right."); *see also id.* at 2132 (emphasis added) ("[W]e use *history* to determine which modern 'arms' are protected by the Second Amendment.").  The government, argues that the "common use" language is a step-one consideration, but offers the entire quote, clearly showing *Bruen* and *Heller* used the "common use" language as a

12

historical, not textual, line of analysis. *See* DE 19, p. 18 (quoting *Heller*, 554 U.S. at 627) (emphasis added) (the government stating that "[t]he Court later explained (in the following sentence) that this 'common use' limitation 'is fairly supported by the *historical tradition* of prohibiting the carrying of dangerous weapons.'").

In addition, as stated in Mr. Reyna's opening brief, and largely ignored by the government, the "common use" standard is only half of the relevant standard. The other half is that a weapon is unprotected only if it is "dangerous and unusual." This reading is supported by *Bruen*:

> At most, respondents can show that colonial legislatures sometimes prohibited the carrying of 'dangerous and unusual weapons—a fact we already acknowledged in *Heller*. Drawing from this historical tradition, we explained there that the Second Amendment protects only the carrying of weapons that are those in common use at the time, as opposed to those that are highly unusual in society at large. Whatever the likelihood that handguns were considered dangerous and unusual during the colonial period, they are indisputably in common use for self-defense today.

142 S. Ct. at 2143 (quotations removed).

In other words, "in common use" and "dangerous and unusual" are two sides of the same coin. The latter provides the justification for the former. If a weapon is not "dangerous and unusual," then it must be in

13

common use for lawful purposes.  Effectively, it shows that "in common use" and "dangerous and unusual" are a binary: if a firearm falls in one category, it necessarily does not fall in the other. Handguns *used to be* "dangerous and unusual," but today they are "in common use."

### 2. *The common purpose for why unserialized firearms are possessed is not a valid Bruen step-one consideration.*

There is nothing "dangerous" about an unserialized firearm.  It does not fire any less (or more) accurately, or further; or faster, its bullets are not deadlier or less.  Numbers etched by a manufacturer have no functional impact on a firearm.  The absence of a serial number does not convert a firearm into a non-firearm.  *See* 18 U.S.C. § 921(a)(3) (the term firearm means "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.").  A serial number's absence certainly may render a police investigation harder or may frustrate a law enforcement imperative, but it does not make a firearm anymore "dangerous" as understood in *Heller* and *Bruen* or any less a part of the Second Amendment's text.

When *Heller* and *Bruen* describe a weapon as "dangerous," they are referring to something inherent in the design of the weapon—i.e., the way it shoots, its size, the number of bullets it can fire, whether its automatic or semi-automatic.

The government, citing *United States v. Marzzarella*, 614 F.3d 85, 99 (3d Cir. 2010), states that it "cannot conceive of a lawful purpose for which a person would prefer an unmarked firearm."  DE 19, p. 13. Whether or why someone would "prefer" an unserialized firearm is beside the point at step-one's textual analysis.

In addition, the government offers a 1996 law review article stating that the "only reason to obliterate a serial number is to avoid connection with a firearm, typically because it was stolen, used in a crime, or obtained in an illegal transaction."  *Id.* at 14.  However, § 922(k) does not criminalize the act of obliterating a serial number or removing the serial number; it criminalizes the *possessing* of a firearm whose serial number has been obliterated, altered, or removed.  In that way, the conduct § 922(k) addresses, the possession of a firearm (not its alteration), moves it within the Second Amendment's plain text to keep and bear arms – to have or possess a weapon.  *See Heller*, 554 U.S. at

582 (internal citation omitted) ("the most natural reading of 'keep arms' in the Second Amendment is to have weapons."); *Fraser v. ATF*, --- F. Supp. 3d ---, 2023 WL 3355339, at *7 (E.D. Va. May 10, 2023) (district court concluding that that 18 U.S.C. § 922(a)(5) and accompanying regulations restricting firearms sales to persons under 21 years-old, but at least 18 years-old, violated the Second Amendment under *Bruen*, and reading *Bruen* step-one to mean "the most natural reading of keep Arms in the Second Amendment is to have weapons and to bear arm means simply the carrying of arms."): *United States v. Bullock*, --- F. Supp. 3d --- 2023 WL 4232309, at *21 (S.D. Miss. June 28, 2023) (finding § 922(g)(1) unconstitutional as-applied and stating that *Bruen* step-one requires a court "to look at the conduct being regulated, not the status of the person performing the conduct . . . *Bruen*'s first step asks a strictly textual question with only one answer: the Second Amendment's plain text covers possession of a firearm.").

A person may possess an unserialized firearm for reasons unrelated to evading crime, e.g., they inherit it, they (legally) buy a firearm from a friend without even being aware that there is no serial number. The possibilities are legion. That a firearm's serial number is

16

gone plays no part in a "strictly textual question" of whether the

conduct at issue of possessing such a firearm falls within the Second

Amendment. *Id.*; *see e.g.*, *id.* (internal citation omitted) (emphasis

added) (explaining that "Step One" is where *Bruen* conflicts with *Heller*.

*Heller* called proscriptions against felons possessing guns presumptively

lawful. In contrast, *because possession is covered by the Second*

*Amendment's plain text*, *Bruen* makes a felon's possession of a firearm

presumptively constitutional.).

### 3. Section 922(k)'s criminal restriction of firearm possession constitutes a Second Amendment infringement.

The government avers that § 922(k) does not infringe the right of

armed self-defense because: (1) the presence of a serial number does not

impair functioning of a weapon in, and (2) a person can sufficiently

defend themselves with a serialized firearm. *See generally* DE 19, pp.

15-16.

As to number one: the fact that presence of a serial number does

not impair functioning is irrelevant to infringement. If someone

possesses a firearm without a serial number, he must give it up to

comply with § 922(k)'s criminal restrictions. No doubt, stripping

17

someone of a firearm is the definition of taking away his right to armed self-defense.

As to number two: the fact that someone can use *other* firearms for defensive purposes does not extinguish § 922(k)'s constitutional protection. *Heller* made this point when discussing the District of Columbia's ban on handguns in the home: "[i]t is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed." 554 U.S. at 629. Justice Thomas (joined by Justice Scalia) made a similar point when dissenting from the denial of a petition for certiorari:

> Lastly, the Seventh Circuit considered whether law-abiding citizens retain adequate means of self-defense,' and reasoned that the City's ban was permissible because [i]f criminals can find substitutes for banned assault weapons, then so can law-abiding homeowners.' . . . That analysis misreads *Heller*. The question under *Heller* is not whether citizens have adequate alternatives available for self-defense. Rather, *Heller* asks whether the law bans types of firearms commonly used for a lawful purpose—regardless of whether alternatives exist.

*Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015) (Thomas, J., dissenting from denial of certiorari).

The government further argues that § 922(k) imposes a lesser burden on the self-defense right than laws *Bruen* deemed constitutionally compatible, such as shall-issue licensing regimes. *See* DE 19, pp. 16-17. To begin, the discussion of shall-issue regimes was dicta. In any event, *Bruen* footnote nine does not say that laws imposing supposedly minimal burdens are necessarily constitutional. 142 S. Ct. at 2138, n.9. It simply says that shall-issue regimes do not suffer from the same flaws as New York's proper-cause requirement, e.g., subjectivity. *See id.* In addition, deciding whether a law violates the Second Amendment based on how great a burden it imposes is means-ends balancing, which *Bruen* rejected. Post-*Bruen*, courts do not ask about the size of the burden. Any burden is impermissible. *See Ocean State Tactical, LLC v. Rhode Island*, No. 22-CV-246 JJM-PAS, 2022 WL 17721175, at *14 n.28 (D.R.I. Dec. 14, 2022) ("*Bruen* does not allow the [c]ourt to balance the extent of an intrusion into a Second Amendment protected right against the strength of the public interest served by the LCM Ban or the closeness of the means of the statute and its end. The [c]ourt cannot . . . conclude that the impairment is modest and the fit between legislative interests and the restrictions imposed by

the Act is both close and reasonable.  Instead, any intrusion into a right

protected by the Second Amendment thrusts us into the territory of

justifying the regulation as one historically placed on similar weapons."

The same is true here.

### 4. Section 922(k)'s "small subset" is irrelevant for the Bruen step-one analysis.

The government argues that Mr. Reyna's cited cases in his

opening brief are not controlling because the decisions "involve a

blanket ban on a specific class of individuals possessing any type of

firearm" whereas here, the government claims, § 922(k) by contrast,

restricts only a small subset of arms "not typically possessed by law-

abiding citizens for lawful purposes."  DE 19, p. 18.  Section 922(k)'s

sample size is not a relevant consideration at *Bruen* step-one (and likely

has no purpose at step-two).  The question under the Second

Amendment at *Bruen* step-one is textual based on the conduct

regulated, not sample size.  The cases cited by Mr. Reyna in his opening

brief are apposite authority because the courts there found that the

challenged regulation addressed protected conduct without looking

beyond the text to any extrinsic considerations of the challenged

statute.  *See e.g., United States v. Rahimi*, 61 F.4th 443, 454 (5th Cir.

2023) (holding that "Rahimi's possession of a pistol and a rifle easily falls within the purview of the Second Amendment. The amendment grants him the right to keep firearms, and possession is included within the meaning of keep."); *see also United States v. Connelly*, --- F. Supp. --- 3d, 2023 WL 2806324, at *5 (W.D. Tex. Apr. 6, 2023) (finding 18 U.S.C. § 922(g)(3) unconstitutional as-applied under *Bruen* ("[a]s in *Rahimi*, the challenged law [fits within *Bruen* step-one] . . . and possession is included within the meaning of keep."); *Range*, 69 F.4th at 103 (internal citation omitted) (at step-one, the Court reasoned that "[t]he Second Amendment's plain text covers Range's [possession] conduct," and the Constitution presumptively protects that conduct."); *United States v. Price*, --- F. Supp. 3d ---, 2022 WL 6968457, *3 (S.D. W.V. Oct. 12, 2022) (emphasis added) (finding at *Bruen* step-one, that § 922(k)'s regulated conduct is subject to constitutional protection because it "criminalizes the mere *possession* of a firearm *after* a serial number is removed, obliterated, or altered in any way, whether or not the firearm is then placed into commerce.").

The Second Amendment's text makes no distinction between serialized firearms, and unserialized firearms. The federal definition of

a firearm, *see* § 921(a)(3), makes no distinction.  Operationally, what

makes a firearm a firearm is unrelated to the manufacture's

serialization, and a firearm without a serial number could function as

well for self-defense, such as a handgun, within the home as a firearm

lacking a manufacture's serialization.  *See e.g.*, *McDonald v. City of*

*Chicago*, 561 U.S. 742, 767-68 (2010) (describing the ubiquity of

handgun use for defensive purposes within the home.  The Court's

analysis there did not hinge on the presence of a firearm serial

number).  As a matter of text, § 922(k) plainly regulates firearm

possession.  That it intrudes upon the right to possess a firearm, an

instrument not defined by serial numbering, subjects the statute to

constitutional protection and review.  *See Ocean State Tactical, LLC*,

2022 WL 17721175, at *14 n.28.

Additionally, the District Court's reasoning that for step-one "to

have any meaning" it must be defined "specifically enough" that it can

"meaningfully compare" it to "the Second Amendment's plain text."

App. p. 12.  The Second Amendment's text says what it says.  The

analysis at step-one is straight textual and the District Court should

not have "defined specially enough" § 922(k) to fit its mode of Second

Amendment exposition.  Rather, the District Court's task was to apply

the Second Amendment's plain text as written against § 922(k)'s textual

regulation of conduct.  This is a straightforward task that the District

Court misapplied to reach a preferred outcome.  The District Court's

concern that if § 922(k) is analyzed as a possession offense, then "any

number of other challenged regulations would boil down to mere

possession, then promptly proceed to automatically to Step Two" is

inimical to the solely textual analysis *Bruen* demands  App. 12.  It may

be true, many firearm regulations under *Bruen* may now be subject to

Second Amendment review.  That is not concerning, that is the Court's

Second Amendment standard.  That state action in the realm of firearm

regulation is now more amenable to a Second Amendment challenge is

of no consequence under *Bruen*.

Last, the District Court cited case law, *see Marzzarella*, 614 F.3d

at 98, opining those firearms "with obliterated serial numbers are

useful for criminal activity because identifying who possessed a firearm

is more difficult when a serial number is destroyed."  Whether that is

true, is not a textual consideration.  App. p. 14; *see also id.* (the District

Court improperly referencing at step-one that a person using a firearm

23

without a serial number "ensures he has a greater likelihood of evading justice."). The language the District Court engrafted was an attempt to balance an individual's right to possess with the state's law enforcement interests, a method of Second Amendment analysis and consideration *Bruen* vitiated. *See Bruen*, 142 S. Ct. at 2127 (the Second Amendment does not "support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.").

To that end, the District Court's consideration and analysis of a firearm's "common use" or "typicality" of possession demonstrates aptly why the "common use" inquiry is best reserved, indeed must be reserved, for step-two of the *Bruen* analysis, and the submission of evidence. The District Court stated that "a law-abiding citizen could use a gun with an obliterated serial number for lawful self-defense isn't *evidence* that firearms with obliterated serial numbers are typically used by law-abiding citizens for lawful self-defense." App. 15 (emphasis added). Step-one is not an evidence-based inquiry under *Bruen,* again, it is textual. Moreover, the District Court did not admit evidence at

24

step-one, thus its reference to evidence, unsolicited and unsubmitted, was not appropriate or supported. What the District Court's reasoning showed is that treatment of a firearm's "common use" and "typicality" may need to include evidence, the District Court erred by not admitting any evidence and not proceeding to the step-two evidence phase. The District Court's reference to non-admitted evidence at the step-one textual analysis phase constitutes legal error. *See id.* at 14. (The District Court, without support, stating "that deserialized guns are [not] typically used by law-abiding citizens for law-abiding purposes."). The District Court's inclination to examine evidence was not inappropriate, but its consideration of non-existent evidence at step-one, was inappropriate. Remand here for *Bruen* step-two is justified.

### 5.   *This Court should not consider the government's historical argument.*

This District Court did not engage *Bruen* step-two, and as stated *supra*, did not make evidentiary findings. The District Court is the tribunal that should make those evidence-based determinations first. Review here is premature. The government's request that this Court consider its historical arguments is without merit.

In *Atkinson*, this Court stated that "the district court is best suited to conduct the required [historical] analysis in the first instance." 70 F.4th at 1023.  The same is true here.  In addition, in *Atkinson*, this Court elucidated an exacting historical standard in which "some historical analysis" is "nothing close to what would satisfy the *demanding* standard set forth in *Bruen*."  *Id.* at 1022 (emphasis added). Rather, the District Court here should roll "up its sleeves and examine[] a wealth of laws and commentary spanning several centuries, paying close attention to the enforcement and impact of various regulations." *Id.*  Further, this Court in *Atkinson*, stated that the District Court should decide what types of evidence to admit in the first instance to develop the evidentiary record, *see id.* at 1020, and what types of evidence may be of particular use in determining the historically consistency of the challenged firearm regulation.  *See e.g.*, *id.* at 1024 (reasoning that a district court should decide "what evidence can a court consider in assessing whether" historical distinctions or historical analogues the government may offer "have firm historical support."). Consistent with *Atkinson*, this Court should remand for *Bruen* step-two, and evidentiary review of the historical record attending § 922(k).

## CONCLUSION

WHEREFORE, this Court should reverse the District Court's

holding that § 922(k)'s regulated conduct is not subject to the Second

Amendment's plain text and remand for consideration of the *Bruen*

history and tradition test.


Date:  July 21, 2023


Respectfully submitted,

Northern District of Indiana
Federal Community Defenders, Inc.

By:  s/Chad J. Pennington
200 E. Main Street, Suite 905
Fort Wayne, IN  46802
Phone: (260) 422-9940
Fax: (260) 422-9954
E-mail: Chad_Pennington@fd.org

**CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7)(C)**

The undersigned certifies that this brief complies with the volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(C) and Circuit Rule 32 in that it contains 5393 words as shown by Microsoft Word 2016 used in preparing this brief.

Date:  <u>July 21, 2023</u>

<u>s /Chad J. Pennington</u>
Chad J. Pennington, Attorney for
Attorney for Defendant-Appellant
Jose Reyna

## CERTIFICATE OF SERVICE

I hereby certify that on <u>July 21, 2023</u>, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s /Chad J. Pennington</u>
Chad J. Pennington, Attorney for
Attorney for Defendant-Appellant
Jose Reyna